IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.: 1:12-cv-11663

_____
                                                          )
SOUTH SHORE HELLENIC CHURCH, INC.,      )
                                                          )
                          Plaintiff,                      )
v.                                                        )
                                                          )
ARTECH CHURCH INTERIORS, INC., and      )
WILLIAM BURNS, individually, and as         )
President, Artech Church Interiors, Inc.,        )
                                                          )
                          Defendants.                     )
_____)

**DEFENDANTS ARTECH CHURCH INTERIORS, INC.'S AND WILLIAM BURNS'
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR LACK OF JURISDICTION, OR FOR FAILURE TO JOIN AN
INDISPENSABLE PARTY (RULE 19), OR, ALTERNATIVELY, FOR LEAVE TO FILE
THIRD-PARTY COMPLAINT**

<u>INTRODUCTION</u>

This is a state-law-based, six-count action alleging diversity of citizenship jurisdiction

under 28 U.S.C. § 1332.  Plaintiff, South Shore Hellenic Church, Inc. ("SSHCI") alleges breach

of a contract to which it is a stranger, negligence and several related theories.[1]

Plaintiff's pleadings and exhibits demonstrate the subject work contract was between

Artech Church Interiors, Inc. ("Artech") and Panagia Greek Orthodox Church ("Panagia"), an

unincorporated association or entity, for plaster repair and other work to be done at Panagia's

church structure, in Cohasset, Massachusetts. The contract was executed by defendant William

---

[1] Counts I through V are against Artech alone and allege breach of contract (Count I), "Breach of Unqualified
Express Guarantee" (Count II), "Breach of Implied Warranty to do a Workmanlike Job" (Count III), negligence
(Count IV), and "Breach of Implied Covenant of Good Faith and Fair Dealing" (Count V).  Count VI is against
Artech & Wm. Burns, as an individual and officer of Artech, and alleges violation of M.G.L. c. 93A, §§ 2 and 9.

Burns ("Wm. Burns"), on behalf of Artech, as a corporate officer, and Edwin R. Lofgren, as Parish Council President of Panagia.

Notably, the named plaintiff in this action, SSHCI, is not a party to the contract (or otherwise referenced in the contract or any other writings or communications between the contracting parties) and it has not asserted rights as a third-party beneficiary under the contract.[2] Indeed, recently, when representing the character of this action to the court, plaintiff's counsel failed to mention any purported injury to the named corporate plaintiff, instead describing the party in interest as a "*church parish of roughly 90 stewards*." (Doc. No. 24-3, at p. 3 of 17; transcript of November 18, 2013 Status Conference) (emphasis supplied).

Michael J. Cave, Corp. ("Cave"), negotiated the scope of work set out in the contract, planned and managed the work, controlled the means and methods to perform the work, and completed the work outlined in the contract through its own workers/employees or its subcontractors.  Cave hired James J. Amirault d/b/a Jim's Pro Plastering ("Jim's Pro") as its subcontractor to complete plastering work at the church.

The Amended Complaint alleges that Michael G. Foley d/b/a M. G. Foley Construction ("Foley") and Stephen Flynn d/b/a Flynn Roofing Co. ("Flynn") were hired to perform roof, flashing, repointing and other repairs <u>after</u> Cave and Artech completed their work under the contract with Panagia.  (<u>See</u> Doc. No. 9, Amend. Complt. at ¶¶39&52).  Plaintiff complains of <u>ongoing</u> water leaks and damage to the church building.

The crux of plaintiff's claim is that, contrary to various verbal and written representations, the roof and other areas of the church structure were not rendered watertight. And yet, plaintiff failed to add all of the following to the suit, despite their purported

---

[2] Accordingly, plaintiff's entire suit is dubious because it appears not to have subject matter jurisdiction due to lack of standing.  <u>See Miree v. DeKalb County, Georgia</u>, 433 U.S. 25, 32 (1977).

involvement with roof inspections and repairs, investigating for and repairing leaks, making the building watertight and other exterior and interior work on the church building, which plaintiff deems deficient: Foley, Flynn, Jim's Pro, and Cave – all are Massachusetts citizens and should all be parties in this action. They were not added, although necessary, because plaintiff sought to manufacture diversity jurisdiction where there can be none.

This memorandum will demonstrate that this lawsuit must be dismissed because:

First, plaintiff, SSHCI, has no standing to bring this suit;

Second, Panagia, a non-corporate entity, whose owners or members and their respective domiciles have not been revealed by the plaintiff, is the only real party in interest and thus is, at a minimum, an indispensable party plaintiff, but joinder of whom would destroy diversity jurisdiction; and,

Third, Cave, Jim's Pro, Foley and Flynn are indispensable parties, but joinder of whom is not feasible because it would destroy diversity of citizenship jurisdiction.

Alternatively, if the Court does not dismiss plaintiff's action, the Court should grant leave to the defendants to file a third-party complaint against Cave, Jim's Pro, Foley and Flynn.

BACKGROUND

A.     Panagia Greek Orthodox Church as Contracting Party.

Artech, entered into a contract with Panagia. (Doc. No. 9; Amend. Complt. at ¶ 25; Doc. No. 9-13; the contract (Amend. Complt. Ex. 13)). None of the plaintiff's contracting documents or related documents, which were shared at any time with any defendant, and which plaintiff appends as exhibits to its Amended Complaint make any reference to "South Shore Hellenic Church, Inc." (See Doc. Nos. 9-1 through 9-35.) Further, plaintiff alleges that its counsel sent a M.G.L. c. 93A demand letter to the defendants, (Doc. No. 9; Amend. Complt. at ¶120); however,

3

that letter states: "I represent the Panagia Greek Orthodox Church of Cohasset, MA." (Doc. No. 9-31; alleged c. 93A demand at p. 1.)  Nowhere in the letter is there any reference to the current plaintiff, SSHCI, or any similarly named entity or organization.

> B. <u>Involvement of Persons/Entities That Plaintiff Failed to Add to Suit</u>

> 1. <u>Cave's Work and Involvement</u>.

The allegations of the Amended Complaint are extensively based on the conduct of Cave in performing the contract.[3]  For example:

- "BURNS, together with Michael Cave (hereinafter "CAVE") conducted the site evaluation of the Church on behalf of ARTECH. During the course of this evaluation, CAVE ascended the exterior of the Church to evaluate elevated areas the roof and bell-tower…" (Doc. No. 9, ¶ 17.)

---

[3] Additionally, plaintiff alleges:
- "CAVE was designated … as ARTECH's Project Manager." (Doc. No. 9 at ¶22.)
- "Upon information and belief, shortly thereafter, CAVE joined Bourikas for a 'walk around' site inspection of the Church to review the punch list together. By October 6, 2009, ARTECH had addressed the 'punchlist' to Panagia's satisfaction.  Panagia issued ARTECH its last installment check no. 106 on October 6, 2009. (Exhibit No. 17, supra)[referring to Doc. No. 9-17]…" (Doc. No. 9, ¶ 35.)
- On "September 21, 2010…Lofgren expressed his disappointing attempts to work with CAVE over the preceding months as follows:  'As explained in our conversation, I have been working with Mike Cave in an effort to deal with our water intrusion problems which have devastated the Narthex area of the church interior after all the work ARTECH did to restore our church inside & out…We subsequently found [out the church was not made "tight"] that we have both roof flashing and stone joint leaks which have allowed water intrusion and, once again, devast[at]ed the interior of the Narthex room."  <u>Id</u>. at ¶42.
- "Lofgren wrote BURNS a follow-up message to their last meeting, stating in pertinent part:
Bill: haven['] t heard from you or Mike (Cave) as to when the masonry work can be completed, and it is rapidly becoming a weather issue. If it's going to be below freezing at night, I don't see how we get cement to cure properly, do you? If we can't do the masonry work on the roof, we can't button up the building to do the work in the interior above the altar.
You should know that there are glaring gaps in the masonry all over the building, and it['] s clear that the contract was not honored. You saw the pictures of some of it. …
What are you willing to do to get these wrongs righted a.s.a.p. ???? May I hear from you right away on this??? Thank you, Ed Lofgren."  <u>Id</u>. at ¶45
- "Later that day BURNS wrote Lofgren a brief response stating 'Ed, Mike Cave will be at the church Saturday morning to complete the masonry work. He will call you tomorrow to confirm the time. Sorry for the delay. Bill'" <u>Id</u>. at ¶46.
- "Upon information and belief, CAVE kept his scheduled appointment to complete the masonry work on Saturday, November 6, 2010. He arrived at the Church carrying a small pail of mortar with which to execute the necessary repointing. It was readily apparent that (1) the extent of the necessary mortar repointing work was enormous, not just a little 'filling' and 'patching,' and (2) it was too cold to do mortar work. After executing a few patchwork mortar repairs, CAVE informed Lofgren that he could not proceed any further, and he therefore promised Lofgren to return next spring (when temperatures would be warm enough) to complete the necessary mortar repointing work." <u>Id</u>. at ¶47.

- "CAVE informed Panagia he had made the Narthex 'tight' and took care of any outside water leaks by some minor roof and stonework repairs, which primarily consisted of screwing down the loose access hatch to the bell-tower, located above the Narthex." <u>Id</u>. at ¶28.

- "Upon information and belief, shortly thereafter, in the spring of 2010, Lofgren informed CAVE that new water stains and plaster failure had developed in the areas where ARTECH had previously restored the Church's interior. CAVE subsequently visited the Church site and examined the interior water damage, and thereafter promised Lofgren to repair (at no charge to Panagia) both the unsatisfactory interior condition and what he identified as the cause of the outside water leaks. Over the course of the following several months, CAVE cordially and continually assured Lofgren he would plug the outside water leaks, repair the Church's external building envelope, and restore its damaged interior. By September 2010, CAVE failed to take any remedial action despite his initial promise and subsequent repeated assurances to Lofgren." <u>Id</u>. at ¶38.

- "Upon information and belief, Lofgren eventually became exasperated with CAVE's broken promises and lack of performance, so he finally requested third-party assistance from Michael G. Foley...On or about September 14, 2010, Foley inspected elevated areas of the exterior…." <u>Id</u>. at ¶39.

- "In an electronic mail dated March 29, 2011 (Exhibit No. 28), an exasperated yet ever hopeful Lofgren wrote BURNS the following desperate plea for help:

  "Bill: Mike Cave called today. He seems to have some personal work/financial issues. He said he would 'hire' a person to do the mortar work in late May. Frankly, I think we deserve resolve to this issue immediately." <u>Id</u>. at ¶50.

- "Upon information and belief, neither BURNS, CAVE nor anyone else from ARTECH ever responded to Lofgren's March 25, 2011 electronic mail, or for that matter ever again." <u>Id</u>. at ¶51.

    2.  <u>Jim's Pro's Work and Involvement</u>.

In his deposition, Michael Cave testified that Cave does not perform skilled labor itself but rather hires subcontractors to perform such work and supervises their progress. <u>See</u> M. Cave Dep., annexed hereto as Ex. 1, at pp. 47-48. Mr. Cave also testified that Jim's Pro (Jimmy Amirault) was hired as to perform the plastering work on the project at Panagia Orthodox Church. <u>See</u> Ex. 1, at p. 192 (referring to J. Amirault of Jim's Pro as "our plasterer"). Mr. Cave described a portion of the work performed by Jim's Pro as follows:

Amirault started to rebuild [the narthex] putting in new laths, new blue board....[F]irst the walls get done with blue board, new laths. Everything is secured with screws and tape and then he started to replaster with base paint plaster.

Ex. 1 at p. 193.[4]  The complaint seeks damages on the basis that "plaster failure had developed in the areas where ARTECH had previously restored the Church's interior."  (Doc. No. 9 at ¶ 38.)

> 3.   Foley's and Flynn's Work and Involvement.

The complaint alleges that Foley and/or Flynn were hired to seal and flash the roof of the church after work on the Artech-Panagia contract was complete, but yet, to date, plaintiff claims it has leaks in areas of the church in direct proximity to Foley & Flynn's work (roofs and stonework above the narthex and altar areas of the church building).

- "Lofgren eventually became exasperated with CAVE's broken promises and lack of performance, so he finally requested third-party assistance from Michael G. Foley (hereinafter 'Foley'), a general carpentry tradesman and principal of M. G. Foley Construction. On or about September 14, 2010, Foley inspected elevated areas of the exterior of the Church which were normally not visible from ground level and accessible only by means of a thirty (30) foot long extension ladder. … Upon inspection Foley discovered numerous mortar defects consisting of cracked, loose and missing mortar in the joints between the exterior granite stonework. Whatever various joint repairs had been made over a long period of years appeared to be poorly made, and employed the incompatible use of irregular, non-conforming mortars, roofing cement, and various urethane sealants. The sheer extent and seriousness of the mortar defects was overwhelming, and it was readily apparent that little, if any mortar repairs at all were in fact executed in these normally hidden areas during the prior year's renovation by ARTECH." (Doc. No. 9 at ¶39.)

- "In an electronic mail dated March 29, 2011 (Exhibit No. 28), an exasperated yet ever hopeful Lofgren wrote BURNS the following desperate plea for help: … The roof work has been completed [by Foley] and the mortar work on the roof needs to be completed so we know we are water tight from above. Then we can proceed to repair the damaged area inside the church due to the water intrusion." (Doc. No. 9 at ¶50 (bracketed words in original), and making reference to Doc. No. 9-28.)

---

[4] In response to the question: "The next step was Jimmy Amirault rebuilding the walls?" Michael Cave responded "Rebuilding the walls." Ex. 1 at p. 194.

- "In a letter dated July 7, 2011, Foley provided Lofgren M. G. Foley Construction's proposal for the necessary mortar repointing work to seal the exterior building envelope of the Church (Exhibit No. 29), and Flynn Roofing Co.'s proposal for roofing services to install new lead step flashing on the Church's walls (Exhibit No. 30). The cost quoted for the two proposals totaled $99,000.00. This consisted of $63,000.00 for the necessary mortar repointing work, and $36,000.00 to remove the existing flashing from the Church's exterior walls, inspect the condition of the mortar joints under the flashing to evaluate the necessity of any repointing, and thereafter install new lead step flashing." (Doc. No. 9 at ¶52, and referring to Doc. Nos. 9-29 & 9-30.)

- The complaint also alleges that on May 3, 2012, well after Foley was hired to seal and flash the roof of the church, and other work, an engineering company found 50% of the masonry joints to be defective and also recommended, *inter alia*, restoration of copper counterflashing.  (Doc. No. 9 at ¶57.)  See also Foley's and Flynn's quotes for work, Doc. Nos. 9-29 & 9-30.

## ARGUMENT

I.      COUNTS I, II, III, IV, V AND VI MUST BE DISMISSED BECAUSE THE PLAINTIFF LACKS STANDING AS IT WAS NOT A PARTY TO, AND HAS NO RIGHTS IN, THE ALLEGED CONTRACT, ACCORDINGLY THIS COURT HAS NO JURISDICTION OVER THIS CASE

"If a party lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case." Dubois v. U.S. Department of Agriculture, 102 F. 3d 1273, 1281 (1st Cir. 1996).[5]

A plaintiff does not have standing under Article III of the United States Constitution, and thus the District Court lacks subject matter jurisdiction, unless plaintiff suffered an "injury in fact… defined as 'an invasion of a legally protected interest…'" Katz v. Pershing, LLC, 672 F. 3d 64, 71 (1st Cir. 2012), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  In

---

[5] Whenever there appears to be a defect in subject matter jurisdiction, such as when there is a question as to plaintiff's standing, this court has an obligation to revisit the issue and must even do so *sua sponte* if the question is not raised by the parties. Fed. R. Civ. P. 12(h)(3); American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138–139 (1st Cir. 2004) ("Federal courts are expected to monitor their jurisdictional boundaries vigilantly and to guard carefully against expansion by distended judicial interpretation.") (citations omitted); see also 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed.) ("Indeed, the appellate court has an obligation to satisfy itself as to both its own jurisdiction and that of the district court. Even the Supreme Court must police subject matter jurisdiction on its own initiative.").

the context of actions on private contracts, a person or entity that is not a party to the contract only suffered an "injury in fact" if it can establish that it has some legally enforceable right under the relevant state law. Miree v. DeKalb County, Georgia, 433 U.S. 25, 32 (1977) (even where United States was party to contract, state law on third-party beneficiaries applied to determine standing); see also AT&T Mobility, LLC v. National Ass'n for Stock Car Racing, Inc., 494 F. 3d 1356, 1360 (11th Cir. 2007) ("The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law.").  Plaintiff cannot establish that it has standing to bring claims sounding in contract regardless of whether the law of Massachusetts (place of the work and the church structure) or Connecticut (place from where written contract proposals were generated) is applied.

Under Massachusetts law, non-parties generally do not have rights sufficient to sustain a claim for breach of contract. See Durand v. IDC Bellingham, LLC, 793 N.E.2d 359, 371, 440 Mass. 45 (2003) ("Because the plaintiffs are not a party to the contract … they have no standing to maintain this action.").  The only exception is when the non-party plaintiff can establish status as an *intended* third-party beneficiary. See Rae v. Air-Speed, Inc., 435 N.E.2d 628, 632-33, 386 Mass. 187 (1982) (adopting Restatement (Second) Contracts §302).[6]  A plaintiff must plead facts and prove that it was the defendant's intent to confer such status.  Doherty v. Admiral's Flagship Condominium Trust, 951 N.E. 2d 936, 943, 80 Mass. App. Ct. 104 (2011) ("[P]laintiff's bare allegation as to each count that she 'was an intended beneficiary of said contract,' with no

---

[6]  Also, James Family Charitable Foundation v. State Street Bank and Trust Co., 956 N.E.2d 243, 246-47, 80 Mass. App. Ct. 720 (2011) (""In contrast to an intended beneficiary, an incidental beneficiary obtains no right to enforce the contract.").  "[A] contract does not confer third-party beneficiary status unless the 'language and circumstances of the contract' show that the parties to the contract '*clear[ly] and definite[ly]*' intended the beneficiary to benefit from the promised performance." Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 464 (2009) (emphasis supplied; brackets in Cumis), quoting Anderson v. Fox Hill Village Homeowner's Corp., 424 Mass. 365, 366-67 (1997).

additional facts as to the defendants' intent, fails to state a claim for relief as an intended third-party beneficiary.").[7]

Documents attached as exhibits to plaintiff's Amended Complaint, which are thereby deemed incorporated into plaintiff's allegations, Fed. R. Civ. P. 10(c); 5A Wright & Miller, supra, at § 1327, make clear that plaintiff, SSHCI, was not a party to the alleged contract. Instead, the contract, attached as Exhibit 13 to the Amended Complaint (Doc. No. 9-13) was executed by Edwin R. Lofgren, Jr. as Parish Council President of *Panagia Greek Orthodox Church*. Further, even the purported M.G.L. c. 93A demand letter, appended to the Amended Complaint as Exhibit 31 states: "On June 22, 2009 Panagia Greek Orthodox Church ('Panagia') contracted (the 'Contract') with Artech Church Interiors, Inc." (Doc. No. 9-31.) Accordingly, as a non-party to the contract, plaintiff, SSHCI's claim must be dismissed unless it has sufficiently alleged that it was an intended third-party beneficiary of the contract. Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 464 (2009). That the plaintiff derives a benefit from a contract between others does not make it an intended third-party beneficiary and does not give it the right to enforce that agreement. Id. Instead, a contract confers third-party beneficiary status if the "language and circumstances of the contract" show that the parties to the contract "clear[ly] and definite[ly]" intended the beneficiary to benefit from the promised performance. Id. at 466, citing Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366-367 (1997); AT&T Mobility, 494 F. 3d at 1360. Plaintiff's pleadings fall well short.

---

[7] Likewise, under Connecticut law, "it is well settled that 'one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract.'" Tomlinson v. Board of Educ. Of City of Bristol, 629 A. 2d 333, 341, 226 Conn. 704 (1993), quoting Coburn v. Lenox Homes, Inc., 378 A.2d 599, 601, 173 Conn. 567 (1977). A prerequisite to finding that a party has standing to sue by virtue of intended beneficiary status is that "both contracting parties must intend to confer enforceable rights in a third party." Dow & Condon, Inc. v. Brookfield Development Corp., 833 A. 2d 908, 914, 266 Conn. 572 (2003) (further citations omitted). This is so because "each party to a contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract." Id. As under Massachusetts law, Connecticut courts look to the terms of the agreement and attendant circumstances to determine whether the parties intended to contract for the benefit of any third person. Id.

On the face of the Amended Complaint and the contract appended to it, the intent of either party to benefit a third party is far from "clear and definite." Anderson, 676 N.E. 2d at 822. Plaintiff's complaint fails altogether to allege that defendant Artech (or defendant Burns) intended for its (their) performance to benefit SSHCI or any third party, as would be required to sustain a claim. Furthermore, noticeably absent from all the documents incorporated into the Amended Complaint is any indication that Artech dealt with or intended to benefit any entity aside from Panagia and/or the christened name of the parish/church, Nativity of the Virgin Mary Greek Orthodox Church.[8]

Perhaps most tellingly, even just prior to litigation, neither Panagia nor its counsel – who is also counsel for the present plaintiff - indicated any intent that SSHCI receive the benefit of the contract with Artech. As mentioned above, Exhibit 31 is a copy of a purported M.G.L. c. 93A demand letter served on Artech by counsel for plaintiff. (Doc. No. 9-31.) Therein, counsel wrote: "I represent the Panagia Greek Orthodox Church of Cohasset, MA." Id. Further, and as discussed, supra, the letter goes on to describe the contract as being between Artech and Panagia and to state that "*Panagia* has suffered … injury." Id. (emphasis supplied). There is no discussion of injury to SSHCI, the corporation which counsel now represents, or of any party's intent that the performance described in the contract benefit SSHCI. Id.

Any argument by plaintiff that SSHCI was an intended beneficiary merely because it was the record owner of the church where repairs were completed misses the point. Looking to the

---

[8] Specifically, Amended Complaint Exhibits 8, 11, and 13 are price quotations and the contract from Artech addressed to Ed Lofgren, Panagia Greek Orthodox Church. (Doc. Nos. 9-8, 9-11 & 9-13.) As mentioned above, Exhibit 13 was executed by Edwin Lofgren as a representative of Panagia, thereby manifesting Panagia's acceptance without mention of SSHCI or that the contemplated performance would benefit a non-party. (Doc. No. 9-13.) Amended Complaint Exhibits 14 and 17 contain copies of checks to Artech, listing the drawers as "PANAGIA GREEK ORTHODOX CHURCH" and "NATIVITY OF THE VIRGIN MARY/PANAGIA." (Doc. Nos. 9-14 & 9-17.) Exhibit 22 is a letter to Bill Burns of Artech from "Ed Lofgren  - Parish Council President – Panagia Church," (Doc. No. 9-22.) and Exhibit 27 is an email enclosing that letter with the subject line "Panagia letter to Bill Burns ArTech Corp." (Doc. No. 9-27.) – neither mention SSHCI or any other third party.

objective manifestations of the parties, rather than their subjective beliefs, <u>Polaroid Corp. v. Rollins Environmental Services, Inc.</u>, 624 N.E.2d 959, 967, 416 Mass. 684 (1993); <u>Waterbury Petroleum Products, Inc. v. Canaan Oil and Fuel Co., Inc.</u>, 477 A.2d 988, 993, 193 Conn. 208 (1984), and in light of the foregoing, it is demonstrated that neither party expressed an intent that some stranger to the contract–SSHCI–receive contract benefits.[9]

Furthermore, plaintiff's conclusory attempts to characterize itself and Panagia as a single entity fail.  (<u>See</u> Doc. No. 9 at ¶ 3.)  As noted above, none of the documents bearing on the subject transaction bears any mention of a corporation known as South Shore Hellenic Church, Inc.  By plaintiff's own concession, defendant contracted with an entity called Panagia.  (Doc. No. 9 at ¶ 25; see Doc. No. 9-13 & 9-31.).  Moreover, SSHCI, the plaintiff has produced no Doing Business As Certificate as of the date of filing suit, and it cannot do so.[10]  That unbeknownst to the defendants, plaintiff opened a bank account in the name of "South Shore Hellenic Church, Inc. DBA Nativity of the Virgin Mary/Panagia," (Doc. No. 9 at ¶29), where such designation was unknown to defendants and the public, or once appeared on a deed for a

---

[9] Absent a showing of intent, real property owners are not necessarily intended beneficiaries of contracts that improve their property. <u>See Doherty</u>, 951 N.E. 2d at 942-43 (plaintiff condominium unit owner was not intended beneficiary of contract between condominium trust and contractors to repair leaks and remove mold from plaintiff's unit); <u>Quigley v. Bay State Graphics, Inc.</u>, 693 N.E. 2d 1368, 427 Mass. 455 (1998) (building owner not intended beneficiary of property insurance contract between tenant and insurance company); <u>Bonan v. United Pac. Ins. Co.</u>, 462 F. Supp. 869, 871-72 (D. Mass. 1978) (owner/developer had no rights under Massachusetts law to enforce contract between contractor and subcontractor to complete project by a certain date); <u>TD Properties, LLC v. VP Bldgs., Inc.</u>, 602 F. Supp. 2d 351, 357-58 (D. Conn. 2005) ("[A] property owner, in contracting for the construction of a building with a contractor who, in turn, has contracted with another entity to supply building materials, is an *incidental* beneficiary, not third-party beneficiary, of the contract between the contractor and the supplier.") (emphasis supplied); <u>see also</u> Restatement (Second) of Contracts §302, cmt. e (building owner is not intended beneficiary of contract between contractor and subcontractor).  Accordingly, where it is demonstrated by the pleadings that neither party manifested intent to benefit the plaintiff, any benefit in plaintiff's favor was merely incidental, and it has no standing to seek redress on the contract.

[10] The filing of such a certificate is required by M.G.L. c. 110, §5, and the failure to do so indicates that Panagia and SSHCI are separate entities or associations, or at bare minimum, that they desired to create such an impression when entering into contracts. <u>See Shane v. Goldstein</u>, 25 Mass. App. Dec. 5 (App. Div. 1962) (purpose of statute requiring certificate is to provide notice to creditors); <u>cf. VanDyke v. Bixby</u>, 448 N.E. 2d 353, 388 Mass. 663 (1983) (filing of certificate competent evidence to establish entity conducting business under trade name); <u>Schwartz v. Abbot Motors, Inc.</u>, 181 N.E. 2d 334, 334, 344 Mass. 28 (1962) (trust which contracted in trade name, but filed certificate, could bring suit in name of trust).

parcel of property unrelated to this suit as "South Shore Hellenic, Inc. a/k/a Panagia Greek Orthodox Church," (Doc. No. 9 at ¶12), is completely immaterial here.  More important is plaintiff's failure to plead identity of ownership, management, or employees between SSHCI, which apparently functions as a mere limited-liability, corporate repository for church property, (Doc. No. 9 at ¶¶13 & 29), and Panagia and/or Nativity of the Virgin Mary Greek Orthodox Church, as *un*incorporated entities or associations, which conduct ecclesiastical affairs, (Doc. No. 9 at ¶¶13, 16, & 21; and Amend. Complt. Exhibits, Doc. Nos. 9-6, 9-10, 9-13, 9-14, & 9-17, as well as holds itself or themselves out to the public as such for business, fundraising and other purposes, (Doc. Nos. 9-10 & 9-15).  Such an organizational structure is permissible, William M. Fletcher, 1A Fletcher Cyc. Corp. §96 (non-profit corporation may be formed to hold real property), but the separateness of the entities under these circumstances may not be disregarded.

Where, as here, a contract is executed by an individual as representative for one entity or association, it is that entity or association alone which has rights and obligations in the contract, regardless of the fact that the individual may also have authority to contract for some second organization. See, e.g., Atlantic Salmon A/S v. Curran, 32 Mass. App. Ct. 488, 493 (1992) (even where "doing business as" certificate filed, where corporate principal undisclosed, individual who executed agreement was contracting party); Perlmutter Printing Co. v. Strome, Inc., 436 F. Supp. 409, 414-15 (N.D. Ohio 1976) (subjective intent to contract on behalf of "Strome Marketing, Inc." was irrelevant where objective circumstances indicated intent to contract on behalf of "Strome, Inc.").  Accordingly, plaintiff's conclusory and/or immaterial allegations as to its identity with Panagia are of no consequence.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Hence, Jurisdiction is not established and it is plaintiff's affirmative burden to do so. Therefore, Counts I, II, III, IV, V and VI of plaintiff's Amended Complaint, which arise from and are all rooted in the subject contract, must be dismissed for lack of standing and subject matter jurisdiction where plaintiff, SSHCI, is not a party to the subject contract and any benefit it received was incidental, not intended, by the contracting parties.

II.     PANAGIA, THE ONLY PARTY WHICH COULD POSSIBLY HAVE STANDING TO BRING COUNTS I, II, III, IV, V. OR VI, IS THE REAL PARTY IN INTEREST, AND CANNOT ESTABLISH COMPLETE DIVERSITY FROM THE DEFENDANTS, AND THEREFORE THIS COURT WOULD BE REQUIRED TO DISMISS FOR LACK SUBJECT MATTER JURISDICTION, EVEN IF THOSE COUNTS WERE BROUGHT BY PANAGIA.

United States District Courts have subject matter jurisdiction for actions based on diversity of citizenship under 28 U.S.C. §1332(a)(1).  Courts have long held that "diversity jurisdiction requires complete diversity of citizenship as between all plaintiffs and all defendants. This means that diversity jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant." Alvarez-Torres v. Ryder Memorial Hosp., Inc., 582 F. 3d 47, 53-54 (1st Cir. 2011) (internal quotation marks and citations omitted), quoting ConnectU LLC v. Zuckerberg, 522 F. 3d 82, 91 (1st Cir. 2008); see Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267, 267 (1806).  Where diversity is incomplete, the court lacks subject matter jurisdiction, and the action must be dismissed. See Gabriel v. Preble, 396 F. 3d 10, 13-14 (1st Cir. 2005); see also Fed. R. Civ. P. 12(b)(1), (h)(3).

When a defendant challenges subject matter jurisdiction on the basis of diversity, plaintiff has the burden to establish the court's jurisdiction by a preponderance of the evidence. Melendez-Garcia v. Sanchez, 629 F. 3d 25, 40 (1st Cir. 2010).  From the outset of litigation, defendants have contended the named plaintiff is not the real party in interest and cannot

establish diversity of citizenship exists for a number of reasons, including that diversity of citizenship has been manipulated and manufactured by plaintiff in its choice of plaintiff and its purposeful act of divorcing from this litigation parties with a necessary and required connection to the controversies, claims and chain of causation to the events and allegations of damage set out in the causes of action in the original Complaint and the Amended Complaint.

For purposes of determining diversity, the citizenship of unincorporated entities is the citizenship of *all* of the entity's members. Taber Partners, I v. Merit Builders, Inc., 987 F. 2d 57, 58 (1st Cir. 1993), citing Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990). SSHCI, a Massachusetts corporation, is a stranger to the work contract underlying all of the causes of action in this suit, and accordingly is not the proper party or entity to bring contract or negligence or bad faith claims because it was not a party to the subject contract. Instead, Panagia was the counterparty to the contract with Artech, and would be the only entity or unincorporated association with contractual rights potentially sufficient to bring suit. As Panagia is not incorporated, its citizenship depends on the citizenship of all of its members. Because neither SSHCI nor Panagia, which is not incorporated, has indicated who are Panagia's owners, partners, or members, and where they are domiciled, neither entity can carry the burden of establishing diversity in this action. Melendez-Garcia, 629 F. 3d at 40. Accordingly, all of plaintiff's counts (all arise from the contract or seek to enforce the contract or standards of care arising thereunder) must be dismissed for lack of subject matter jurisdiction; this would be true even if the claims had been brought by the appropriate and necessary party, Panagia.[11]

---

[11] Further, applying the factors of Fed. R. Civ. P. 19 (see discussion, infra) Panagia is both a necessary and indispensable party. If not added as a party-plaintiff, Panagia will be prevented from protecting its rights under that contract, and/or any subsequent suit it might bring and might subject Artech to inconsistent results with respect to its obligations See F&M Distributors, Inc. v. American Hardware Supply Co., 129 F.R.D. 494, 499 (W.D. Pa. 1990) (contracting party necessary and indispensable because absence would prevent it from protecting its interests and may subject named defendant to inconsistent obligations). Joinder of the unincorporated Panagia as a plaintiff, however, is not feasible, because it may destroy diversity jurisdiction. To date, the plaintiff has objected to discovery

III.    THIS SUIT MUST BE DISMISSED BECAUSE CAVE, JIM'S PRO, FOLEY AND FLYNN ARE INDISPENSABLE PARTIES DEFENDANT, JOINDER OF WHOM IS NOT FEASIBLE BECAUSE IT WOULD DESTROY DIVERSITY JURISDICTION.

To determine whether an action must be dismissed for failure to join an indispensable party, the first question is whether the absent party is "necessary" under Fed. R. Civ. P. 19(a). Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008). If so, the absent party must be joined if "feasible." Id. If joinder of a necessary party is not "feasible," because, for example, it would destroy diversity of citizenship in an action founded on diversity jurisdiction, the court must then determine whether the absent party is "indispensable" within the meaning of Fed. R. Civ. P. 19(b). Picciotto, 512 F.3d at 15, 17-18. If joinder is not feasible, absence of an indispensable party requires dismissal. Id.

A.  Cave, Jim's Pro, Foley and Flynn are necessary parties.

Under Fed. R. Civ. P. 19(a), a party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Cave, Jim's Pro, Foley and Flynn are necessary parties for several reasons. First, a judgment in this action against Artech would "impair or impede" their "ability to protect" themselves in any litigation potentially brought against them by the plaintiff(s). Specifically, in this action, it is alleged that the roof of the subject building remained defective at times *after* Cave and Jim's Pro performed their work, and further *after* Foley and Flynn each performed work on the building.

---

relating to citizenship and failed to demonstrate that none of Panagia's members are domiciled in Connecticut, the domicile of Artech and former domicile of William Burns. Therefore, if Panagia were joined as a party plaintiff, diversity would be deemed incomplete, as a matter of law, for plaintiff's failure to meet its burden of proof. Accordingly, this action must be dismissed under Rules 19 & 12.

While a judgment against Artech alone would not technically be binding upon non-parties, such a judgment *would* impact Cave's, Jim's Pro's, Foley and Flynn's settlement position because it would constitute proof that the work they were hired to perform was defective. See Picciotto, 512 F.3d at 17 (even though not binding on absent party, proceeding to judgment would require proof of conspiracy involving absent party and could thus impair absent party's settlement position). Here, the absent parties alleged negligence and involvement in causation of damages are very much issues in the case.

Moreover, Artech presently seeks to assert claims for common law indemnity and/or contribution against Cave, Jim's Pro, Foley and Flynn. However, if Cave, Jim's Pro, Foley and Flynn are not added as a parties defendant in the present matter, their interests will be "impair[ed] or impede[d]" in that they will be deprived of the opportunity to disprove plaintiff's claims in the first instance, thereby eliminating any possible liability against Artech for which it might seek remuneration, in any event. Accordingly, Cave, Jim's Pro, Foley and Flynn are necessary parties because their absence would "impair or impede" their and Artech's interests related to the subject of the instant complaint.

   B.   Joinder of Cave, Jim's Pro, Foley and Flynn would destroy diversity and is therefore not feasible.

"[W]hen the court's subject matter jurisdiction is grounded in diversity, the joinder of a nondiverse party is not feasible because such joinder destroys the court's subject matter jurisdiction." Picciotto, 512 F.3d at 17. The supplemental jurisdiction statute, 28 U.S.C. 1367, is irrelevant when considering the feasibility of joining a non-diverse necessary party. Id. at 19-23. In the present action, the plaintiff, Cave, Jim's Pro, Foley and Flynn are all domiciled in Massachusetts. Therefore, joinder of these parties as defendants would destroy complete diversity with the named Massachusetts corporation, SSHCI, and is therefore not feasible.

C.   Cave, Jim's Pro, Foley and Flynn are indispensable parties defendant and therefore dismissal is required.

Under Fed. R. Civ. P. 19(b), if it is not feasible to join a necessary party, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[12] In the present action, it would be inappropriate to continue without Cave, Jim's Pro, Foley and Flynn.

Regarding the first of four factors in applying Rule 19(b), the prejudice to the parties, if a judgment is rendered absent the necessary party, militates toward deeming Cave, Jim's Pro, Foley and Flynn indispensable parties. Proceeding without these parties would result in prejudice to their settlement position with respect to any claim asserted against them by the plaintiffs, as well as eliminate their first opportunity to establish that there exists no liability for the defects alleged by the plaintiff at the outset of this action, thus preempting Artech's indemnity claim.

As for the second factor, possibility that prejudice could be reduced or avoided, where proceeding without an absent party would impact that party's settlement position, it is "difficult if not impossible" to shape relief in a manner that would avoid prejudice. Picciotto, 512 F.3d at 18 ("there is no such protective approach possible because the prejudice to [settlement position] would result from the potential outcome of the litigation itself, not the specific terms of any judgment.").

---

[12] Under Rule 19(b), the factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Id.

In <u>Picciotto</u>, the court noted that the third factor, "whether a judgment rendered in the person's absence would be adequate," weighs in favor of dismissal if it there is an alternate forum and it is efficient to litigate the entire suit in state court. <u>Id.</u> at 19. Here, all claims between and among the plaintiffs, Artech, Cave, Jim's Pro, Foley and Flynn could and should have been litigated from the outset in a single state-court action in Massachusetts, which divides liability, if any, proportionately between responsible parties, without the need for separate indemnity and/or contribution actions. Therefore, filing suit in state court in the first instance was the proper manner to assert claims for alleged past and continuing leaks in the building envelope. Accordingly, dismissal of this case is appropriate.

Likewise, the fourth factor, adequacy of remedy if the suit is dismissed, favors dismissal. The plaintiff has asserted only state-law based claims, and, if successful, the plaintiff may be able to receive relief in state court similar or identical to that which it has sought in the present complaint.

Accordingly, because each factor favors deeming Cave, Jim's Pro, Foley and Flynn indispensable parties, and joinder would destroy complete diversity, this action must be dismissed under Rule 19 and/or 12.

IV. **ALTERNATIVELY, IF THE AMENDED COMPLAINT IS NOT DISMISSED, ARTECH SHOULD BE GRANTED LEAVE TO FILE A THIRD-PARTY COMPLAINT AGAINST CAVE, JIM'S PRO, FOLEY AND FLYNN.**

As is evident in the portions of the Amended Complaint discussed and quoted above, the plaintiff attempts to hold Artech liable for the conduct of Cave and Jim's Pro, which plaintiff contends was negligent and breached the contract between Panagia and Artech. <u>See</u> Proposed Third-Party Complaint, annexed hereto as Ex. 3. Specifically, it is alleged that Cave was the "Project Manager", undertook work which plaintiff complains is defective, made various

18

representations as to the water tightness of the roof and building, communicated extensively with plaintiff, but that Cave's efforts to remediate any perceived defect in the roof or elsewhere were inadequate. Likewise, the complaint alleges defective plastering work, which was performed by Jim's Pro as Cave's sub-contractor.  Plaintiff attempts to hold Artech vicariously liable for certain acts, omissions, and representations committed by Cave and Jim's Pro throughout the course of performance on the contract and afterwards.  As such, Artech would have a common law right to indemnity against Cave and Jim's Pro as to any purported damages for which Artech might be held responsible.[13]  Further, insofar as Artech and William Burns might, however unlikely, be held responsible to pay damages to plaintiff, they have a right of contribution against Cave and Jim's Pro.  M.G.L. c. 231B, §1(a) ("where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.").

Further, it is alleged that subsequent to Artech's and Cave's work on the church, Foley and Flynn were hired to perform roofing, sealing and flashing work.  It is also alleged that after Foley and Flynn performed this work, an engineer found the building to be defective.  Given the alleged prevalence of water before and after both (1) Artech and Cave and (2) Foley and Flynn performed work on the project, and the engineer's report which specifically found the sealing and flashing work performed by Foley and Flynn to be defective, Foley and Flynn must be responsible at least in part for water damage at the church caused by negligent flashing and sealing.  Therefore, insofar as Artech might be held liable in negligence to the plaintiffs, it has a right of contribution against Foley and Flynn for the proportion of damages Foley and Flynn caused.  M.G.L. c. 231B, §1(a).

---

[13]  Stewart v. Roy Bros. Inc., 358 Mass. 446, 459 (1970) ("Indemnity is permitted … when one … is exposed to derivative or vicarious liability for the wrongful act of another.").

Given that Cave and Jim's Pro might be required to indemnify or to contribute to any judgment against Artech, and Foley and Flynn may be required to contribute, Artech is entitled to file a third-party complaint against Cave, Jim's Pro, Foley and Flynn.[14]  Moreover, if this action is not dismissed outright, allowing impleader of Cave, Jim's Pro, Foley and Flynn in this action would serve the purposes of judicial economy and efficiency by allowing the facts of the case to be tried in a single proceeding, rather than having separate trials for plaintiff's claim and Artech's indemnity and contribution actions.  Accordingly, if the Court does not dismiss this action under Rules 19 & 12, it should alternatively allow Artech leave to file a third-party complaint against Cave, Jim's Pro, Foley and Flynn.  The proposed Third-Party Complaint is appended as Exhibit 2 to this memorandum of law.

<u>CONCLUSION</u>

For the reasons stated, defendants request this Court allow their Motion to Dismiss because this Court lacks subject matter jurisdiction over this dispute.

Respectfully submitted,
Defendants, Artech Church Interiors, Inc.,
and, William Burns, individually, and as
President, Artech Church Interiors, Inc.,
By their attorney,

Dated:  February 6, 2014

/s/ John McCormack

_____
John McCormack, BBO 561759
SLOANE AND WALSH, LLP
Three Center Plaza, 8th Floor
Boston, Massachusetts 02108
T:  (617) 523-6010
F:  (617) 227-0927
jmccormack@sloanewalsh.com

---

[14] Fed. R. Civ. P. 14(a)("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

I.    834453.1

CERTIFICATION OF CONFERAL OF COUNSEL REGARDING MOTION

Counsel for defendants certifies within in the past few weeks counsel have conferred regarding defendants filing this motion, and issues were not resolved such that this motion must be filed.

/s/ John McCormack

NOTICE OF ELECTRONIC SERVICE
CERTIFICATE OF SERVICE

On February 6, 2014, I, John McCormack, counsel for Defendants certify that the foregoing, Defendants Artech Church Interiors, Inc.'s and William Burns' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint, together with Exhibits, including proposed Third-Party Complaint, were served by electronic service through the Federal Court's electronic filing system to all counsel of record. **Additionally, copies of all of these papers were served by mail on the following non-parties, who are not in the ECF system for this case**:

| | |
|---|---|
| Michael J. Cave, President,<br>Michael J. Cave Corp. a/k/a<br>Michael J. Cave, Corp of Massachusetts<br>615 Wachusett St.,<br>Holden, MA 01520<br>Tel:  (508) 864-8622 | Michael G. Foley, Principal,<br>M.G. Foley Construction<br>P.O. Box 535<br>Humarock, MA 02047<br>Tel:  (617) 549-6304 |
| James J. Amirault, Principal,<br>Jim's Pro Plastering<br>12 Pleasant Lane<br>Leominster, MA 01453<br>Tel:  (978) 343-3116 | Stephen P. Flynn, Manager<br>Flynn Roofing Co. a/k/a<br>Flynn Roofing, LLC<br>408 Belmont Street<br>Quincy, MA 02170<br>Tel:  (617) 479-3431 |

/s/ John McCormack

I.     834453.1