UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11663-GAO

SOUTH SHORE HELLENIC CHURCH, INC., a/k/a "NATIVITY-ASSUMPTION OF THE
VIRGIN MARY GREEN ORTHODOX CHURCH," 'NATIVITY OF THE VIRGIN MARY
GREEK ORTHODOX CHURCH," "NATIVITY OF THE VIRGIN MARY/PANAGIA,"
"PANAGIA GREEK ORTHODOX CHURCH," and "PANAGIA CHURCH,"
Plaintiffs,

v.

ARTECH CHURCH INTERIORS, INC. and WILLIAM BURNS, Individually, and as President,
Artech Church Interiors, Inc.,
Defendants.

ORDER ON REPORT AND RECOMMENDATION
February 26, 2015

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and
Recommendation (dkt. no 50) ("R&R") with respect to the defendants' motion to dismiss (dkt.
no. 32). After carefully reviewing the pleadings, the parties' submissions, the R&R, and the
defendants' objections, I agree with the magistrate judge's analysis and conclusions regarding
the denial of the motion to dismiss. I also agree with the magistrate's allowance of leave to file
third-party complaints against Michael J. Cave (a/k/a Michael J. Cave Corp. of Massachusetts)
and James J. Amirault (d/b/a/ Jim's Pro Plastering). I further agree with the magistrate's
recommendation to not permit a third-party complaint against Michael G. Foley (d/b/a M.G.
Construction) and Flynn Roofing Co. (a/k/a Flynn Roofing, LLC).

In their objection to the R&R, the defendants repeat the assertions made in their Motion
to Dismiss that plaintiff South Shore Hellenic Church ("SSHC") lacks standing or rights under
the contract and that Panagia Greek Orthodox Church ("Panagia Church") is the real party in

interest. Specifically, the defendants object to the magistrate's conclusion that it was "plausible" that SSHC was the contracting principal. Although the defendants insist on the impropriety of that word, I view the magistrate's determination of plausibility to mean that, under the applicable Rule 12(c) standard, considering the facts in the light most favorable to the plaintiff, SHHC contracted under its trade name, Panagia Church. Ultimately, the question as to SHHC and Panagia Church's relationship is highly fact-specific and, where discovery has advanced this far, is properly addressed at the summary judgment stage. To the extent the defendants complain that the magistrate looked beyond the pleadings and exhibits, for example to circumstances showing community knowledge, it does not appear that those considerations were dispositive to her conclusion that SSHC has standing and is the real party in interest.

The defendants also assert that the magistrate erred in denying leave to file a third-party complaint against Foley and Flynn. Although the defendants have presented deposition evidence that suggests Foley and Flynn performed work on the roof at some point prior to the filing of this action, I am not persuaded that Foley and Flynn are required parties under Federal Rule of Civil Procedure 19(a). Granting the motion as to these third-parties who are unrelated to the current defendants would cause undue delay in this case—which has already had its discovery deadlines extended multiple times—and prejudice the plaintiff as it would likely further postpone the resolution of its claims. See Lehman v. Revolution Portfolio, LLC, 166 F.3d 389, 393 (1st Cir. 1999).

Finally, the defendants object to what they call the "procedural anomaly" of the R&R. I do not treat the R&R as making factual findings inappropriate at a motion to dismiss stage. After discovery, the defendants remain free to renew their claims for dismissal in a motion for summary judgment.

Accordingly, I ADOPT in full the Report and Recommendation. The defendants' motion to dismiss (dkt. no. 32) is DENIED as to dismissal. The defendants' request for leave to file a third-party complaint is GRANTED as to Cave and Amirault, and otherwise DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SOUTH SHORE HELLENIC CHURCH, INC.,
a/k/a "NATIVITY-ASSUMPTION OF THE
VIRGIN MARY GREEK ORTHODOX CHURCH,"
"NATIVITY OF THE VIRGIN MARY GREEK
ORTHODOX CHURCH," "NATIVITY OF THE
VIRGIN MARY/PANAGIA," "PANAGIA GREEK
ORTHODOX CHURCH," and "PANAGIA CHURCH,"
    Plaintiffs,


    v.                                CIVIL ACTION NO.
                                       12-11663-GAO


ARTECH CHURCH INTERIORS, INC. and
WILLIAM BURNS, Individually, and
as President, Artech Church
Interiors, Inc.,
    Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS ARTECH CHURCH INTERIORS, INC.'S AND WILLIAM**
**BURNS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**(DOCKET ENTRY # 32)**

**August 28, 2014**

**BOWLER, U.S.M.J.**

    Pending before this court is a motion to dismiss filed by

defendants Artech Church Interiors, Inc. ("Artech") and William

Burns ("Burns") (collectively "defendants") in this breach of

contract action involving repairs to the Panagia Greek Orthodox

Church in Cohasset, Massachusetts. (Docket Entry # 32). After

conducting a hearing, this court took the motion (Docket Entry #

32) under advisement.

<u>PROCEDURAL BACKGROUND</u>

    Defendants move to dismiss the amended complaint under

Fed.R.Civ.P. 12(c) ("Rule 12(c)") on the basis that plaintiff South Shore Hellenic Church, Inc. ("SSHC") lacks Article III standing because it is not a party to the contract. (Docket Entry # 32, ¶ 1). Defendants also seek dismissal due to the absence of diversity jurisdiction because the Panagia Greek Orthodox Church, an unincorporated association which signed the contract, is the "real party in interest" as well as a required party under Fed.R.Civ.P. 19 ("Rule 19"). (Docket Entry # 32, ¶ 2). Further, because the citizenship of all of its members are not diverse from the Connecticut citizenship of defendants, defendants move to dismiss the action under Fed.R.Civ.P. 12(b)(1) and (h)(3) ("Rule 12(b)"). (Docket Entry # 32, ¶ 2) (Docket Entry # 33, pp. 13-14).

Defendants further submit that Michael Cave ("Cave"), Jim's Pro Plastering ("Jim's Pro"), Michael G. Foley d/b/a M.G. Foley Construction ("Foley") and Stephen Flynn d/b/a Flynn Roofing Co. ("Flynn") are required parties under Rule 19 whose joinder is not feasible because it deprives the court of diversity jurisdiction.[1] Alternatively, defendants request leave to file a

---

[1]   The motion argues that "M. G. Foley Construction," "Stephen Flynn" and "Jim's Pro Plastering" are the required parties (Docket Entry # 32, ¶ 4) whereas the supporting memorandum asserts that "Michael G. Foley d/b/a M.G. Foley Construction," "Stephen Flynn d/b/a Flynn Roofing Co." and "James J. Amirault d/b/a Jim's Pro Plastering" are the required parties (Docket Entry # 33, pp. 2-3, 15-18). The discrepancy does not alter the Rule 19 analysis.

third party complaint against Cave, Jim's Pro, Foley and Flynn.

The amended complaint sets out the following causes of action solely against Artech:  (1) breach of contract (Count I); (2) breach of an express guarantee in the contract (Count II); (3) breach of an implied warranty to do a workmanlike job (Count III); (4) negligence (Count IV); and (5) breach of the implied covenant of good faith and fair dealing (Count V).  Count VI against Artech and Burns, as an individual and officer of Artech, alleges a violation of Massachusetts General Laws chapter 93A, section nine.  Jurisdiction is based on diversity.

## STANDARD OF REVIEW

Defendants challenge SSHC's standing under Rule 12(c). (Docket Entry # 32, ¶ 1).  A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'"  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  Faced with a Rule 12(c) motion, "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor.  R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), "to survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations

3

in the complaint are true.'" Perez-Acevedo v. Rivero-Cubano, 520
F.3d at 29 (quoting Bell and setting out standard of review for
Rule 12(c) motion).

A Rule 12(c) motion nonetheless differs from a Rule 12(b)(6)
motion because it "implicates the pleadings as a whole." Aponte-
Torres v. University of Puerto Rico, 445 F.3d 50, 54-55 (1st Cir.
2006). Filed after the close of the pleadings, a Rule 12(c)
motion is based "on the factual allegations in the complaint and
answer." NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir.
2002).

Subject to certain narrow exceptions and absent a conversion
of the Rule 12(c) motion to a summary judgment motion under Rule
12(d), this court's review is confined to the amended complaint
and the answer.[2] "Exhibits attached to the complaint are
properly considered part of the pleading 'for all purposes,'
including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v.
Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Fed.R.Civ.P.
10(c). Artech's supporting memorandum relies on a number of the
exhibits attached to the amended complaint. These exhibits are

---

[2] This court declines to convert the motion for lack of
standing under Rule 12(c) to one for summary judgment and thereby
include a deposition filed by defendants (Docket Entry # 33-1) as
part of the Rule 12(c) record. The deposition is nevertheless
part of the analysis in determining required party status under
Rules 19 and 12(b)(7). See Davis Cos. v. Emerald Casino, Inc.,
268 F.3d 477, 480 n.4 (7th Cir. 2001) (in ruling on motion to
dismiss for failure to join "indispensable party, a court may go
outside the pleadings and look to extrinsic evidence").

4

part of the Rule 12(c) record.  In the event "'a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'"  <u>Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.</u>, 228 F.3d 24, 32 (1st Cir. 2000) (quoting <u>Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 449, 454 (7th Cir. 1998), in parenthetical).

FACTUAL BACKGROUND

SSHC "is a religious corporation organized" under Massachusetts law.  (Docket Entry # 9, ¶ 3).  Formed and incorporated in May 1980, the articles of incorporation identify the church's name as "South Shore Hellenic Church, Inc."  (Docket Entry # 9-3).  On November 26, 1980, SSHC purchased the Pope Memorial Church located at 811 Jerusalem Road in Cohasset.  (Docket Entry # 9, ¶¶ 10-11) (Docket Entry # 9-3).  SSHC's principal place of business is located at the same address.  (Docket Entry # 9, ¶ 3).  After the purchase, the Pope Memorial Church became a Greek Orthodox church ("the church") and "was named the 'Panagia Greek Orthodox Church.'"[3]  (Docket Entry # 9, ¶ 11).

On June 19, 1984, SSHC purchased the adjacent property at

---

[3]  To support this fact, the amended complaint attaches an "Inventory Form Continuation Sheet" filed at the Massachusetts Historical Commission in Boston.  The form states that the "full name of the church now is Panagia Greek Orthodox Church."  (Docket Entry # 9-2).

5

819 Jerusalem Road in Cohasset. (Docket Entry # 9, ¶ 12). The deed identifies the purchaser as "South Shore Hellenic Church, Inc. a/k/a Panagia Greek Orthodox Church." (Docket Entry # 9-5). The same name appears on the accompanying secretary's certificate and on the consent by the Greek Orthodox Archdiocese of North and South America filed with the deed. (Docket Entry # 9-5).

In 1997, the church "was formally consecrated as the 'Nativity-Assumption of the Virgin Mary Greek Orthodox Church'" and "sanctioned by the Greek Orthodox Archdiocese of America as part of the Greek Orthodox Diocese of Boston." (Docket Entry # 9, ¶ 13). Members of the church and its presiding bishop refer to the church as the "Panagia Church." (Docket Entry # 9, ¶ 13) (Docket Entry # 9-6).

In early 2009, the church building began to experience water leaks that damaged the interior. (Docket Entry # 9, ¶ 15). Both the interior walls and the ceiling developed "visible water stains, discoloration, cracks, calcification, peeling and delamination of the lath and painted plaster surfaces." (Docket Entry # 9, ¶ 15). In the spring of 2009, SSHC's board of stewards decided to undertake repairs to restore the water damaged interior and repair the exterior building envelope. (Docket Entry # 9, ¶ 16). Edwin R. Lofgren ("Lofgren"), president of the board at the time, and Peter Bourikas ("Bourikas"), chairman of the board's building committee,

6

interviewed a number of prospective contractors. (Docket Entry #
9, ¶ 17). In addition to a few other contractors, Burns and Cave
conducted an on site evaluation of the church. (Docket Entry #
9, ¶ 17). During the inspection, Cave climbed the exterior of
the church to evaluate the roof and the bell tower. (Docket
Entry # 9, ¶ 17).

On May 1, 2009, Artech submitted a proposal or quote in a
letter to Lofgren "for construction work to be done at Panagia
Greek Orthodox Church." (Docket Entry # 9-8) (Docket Entry # 9,
¶ 18). Burns, as president of Artech, signed the quote. The
quote included seven paragraphs categorizing the work, each with
subparagraphs, for a total cost of $111,805. (Docket Entry # 9,
¶ 18).

After a number of revisions, on June 18, 2009, Burns sent
Lofgren another proposal or quote in letter form. (Docket Entry
# 9, ¶ 22) (Docket Entry # 9-13). The four page letter contained
seven separately priced categories of work, each with
subparagraphs, for a total cost of $116,625 and a $4,600 discount
if the work was "done at the same time." (Docket Entry # 9, ¶
22) (Docket Entry # 9-13). The quote identified Cave as "Artech
Project Manager." (Docket Entry # 9-13).

Burns signed the letter as president. (Docket Entry # 9-
13). The contract did not include an integration clause.
Underneath Burns' signature appears language that, "By signing

below, we agree to contract Artech Church Interiors for the work selected." (Docket Entry # 9-13). Below this language is a line for a "Purchaser Representative" and underneath this line is a signature line. (Docket Entry # 9-13). On June 22, 2009, Lofgren as "Parish Council President" wrote and signed his name on the signature line. (Docket Entry # 9-13). "Panagia Greek Orthodox Church" is the designated purchaser representative. (Docket Entry # 9-13). Lofgren then mailed the contract and a required deposit of $35,000 to Artech. (Docket Entry # 9, ¶ 25) (Docket Entry # 9-14). The address line in the upper left corner of the check reads, "Panagia Greek Orthodox Church" at 811 Jerusalem Road in Cohasset. (Docket Entry # 9-14). The property assessment card for the building and land on file at Cohasset town hall when the parties entered into the contract reflects SSHC as the owner.[4]

The contract included a category for "Exterior Waterproofing" with a subcategory to repoint "[a]ll loose and missing mortar joints." (Docket Entry # 9, ¶ 23) (Docket Entry # 9-13). A category for the "Narthex" likewise included a subcategory to "have old loose or missing mortar replaced." (Docket Entry # 9-13). The contract represented that "qualified

---

[4] Although the record contains only the 2012 property assessment card, the assessment reflects that the last sale took place in 1980. The card includes the 2009 assessed value of the property. (Docket Entry # 9-35).

craftsmen" would execute the work and that, "Artech Church Interiors guarantees all workmanship for a period of one year from the date of project completion." (Docket Entry # 9, ¶ 22) (Docket Entry # 9-13).

On June 29, 2009, Lofgren and Joanne S. Kelley, a member of the board of stewards and treasurer of the church, opened a commercial checking account at Rockland Trust Bank on behalf of "South Shore Hellenic Church, Inc., DBA Nativity of the Virgin Mary/Panagia." (Docket Entry # 9, ¶ 29) (Docket Entry # 9-16). Starting on July 8, 2009, the church "made a series of five, equal installment payments" to Artech in the amount of $15,405. (Docket Entry # 9, ¶ 30) (Docket Entry # 9-17). The checks do not identify SSHC in the address line. (Docket Entry # 9-17).

The "work proceeded throughout the summer of 2009." (Docket Entry # 9, ¶ 31). At an undetermined point in time, Cave "informed Panagia that he had made the Narthex 'tight' and took care of any outside water leaks by some minor roof and stonework repairs." (Docket Entry # 9, ¶ 28). On October 6, 2009, the church made the last installment payment after Cave completed a "punch list" of 20 items requested by Bourikas. (Docket Entry # 9, ¶ 35) (Docket Entry # 9-18).

In late February 2010, the church's exterior building envelope developed water leaks. (Docket Entry # 9, ¶ 36). The leaks caused water damage to the ceiling and the walls of the

9

Narthex and to a painted mural in the apse above the altar "which had never previously suffered water damage." (Docket Entry # 9, ¶ 36). The church contacted its insurance company which sent a representative to inspect the damage on March 30, 2010. (Docket Entry # 9, ¶ 37). The representative observed lifted shingles on the roof above the altar.[5] (Docket Entry # 9, ¶ 37) (Docket Entry # 9-19, p. 1). He also documented "[w]ater leaking through stones" as well as water damage to the Narthex wall and a sanctuary wall. (Docket Entry # 9, ¶ 37).

Lofgren informed Cave about the "new water stains and plaster failure" in the spring of 2010 within the one year warranty period. (Docket Entry # 9, ¶ 38). Shortly thereafter, Cave visited the church and promised Lofgren he would repair the damage at no cost. (Docket Entry # 9, ¶ 38). In the spring and summer of 2010, Cave repeatedly assured Lofgren he would perform the repairs but failed to take remedial action. (Docket Entry # 9, ¶ 38). In September 2010, Lofgren contacted Foley, who identified "numerous mortar defects consisting of cracked, loose and missing mortar in the joints between the exterior granite stonework." (Docket Entry # 9, ¶ 39).

On September 20, 2010, Lofgren contacted Burns directly by email. (Docket Entry # 9, ¶ 40) (Docket Entry # 9-20). The two

---

[5] The state of the roof immediately before and after Artech undertook the work is therefore relevant to these proceedings.

10

spoke by telephone the same day.  (Docket Entry # 9, ¶ 41)
(Docket Entry # 9-21).  In a follow up letter the next day,
Lofgren advised Burns that he had "'been working with Mike Cave
in an effort to deal with our water intrusion problems which have
devastated the Narthex area of the church interior'" after all
the work performed by Artech.  (Docket Entry # 9, ¶ 42) (Docket
Entry # 9-22).  Lofgren also informed Burns that, "'A major part
of the renovation project was to make the church "tight" on the
exterior to avoid the water intrusion'" and that this was "'not
properly done.'"  (Docket Entry # 9, ¶ 42) (Docket Entry # 9-22).
The letter additionally asserted that "'roof flashing and stone
joint leaks'" led to the water intrusion.[6]  (Docket Entry # 9, ¶
42) (Docket Entry # 9-22).

Burns visited the property on October 6, 2010.  After
inspecting the church, he promised Lofgren he would locate "the
source of the water leaks and plug them."  (Docket Entry # 9, ¶
44).  On November 6, 2010, Cave went to the church to perform the
repairs and repointing.  After doing "a few patchwork mortar
repairs," Cave promised Lofgren he would return in the spring
when the temperature was warm enough "to complete the necessary
mortar repointing work."  (Docket Entry # 9, ¶ 47).  Cave did not
return.

Meanwhile, on November 3, 2010, Flynn of Flynn Roofing

---

[6]  See the previous footnote.

11

Company prepared a roofing proposal for Foley. The proposal quoted a price of $36,000 "to install new lead step flashing on walls" and new roof shingles. (Docket Entry # 9-30). In November or December 2010, Foley performed repairs on the roof for an estimated cost of $9,000. (Docket Entry # 9, ¶ 51) (Docket Entry # 9-35).

In an email dated March 29, 2011, Lofgren advised Burns that the roof work was completed. Lofgren also informed Burns that, "'[T]he mortar work on the roof needs to be completed so we know we are water tight'" and "'[t]hen we can proceed to repair the damaged area inside the church due to the water intrusion.'" (Docket Entry # 9, ¶ 42) (Docket Entry # 9-28). Burns did not respond to the email.

On July 7, 2011, Foley provided Lofgren with a proposal to do "the necessary mortar repointing work to seal the exterior building envelope" for $63,000. (Docket Entry # 9, ¶ 52) (Docket Entry # 9-29). The proposal included the aforementioned $36,000 proposal from Flynn to install new lead step flashing and roof shingles. (Docket Entry # 9, ¶ 52) (Docket Entry # 9-29) (Docket Entry # 9-30).

## DISCUSSION

### I. Standing

Defendants argue that SSHC lacks standing because it was not a party to the June 22, 2009 contract. Article III of the

Constitution endows the judicial branch with the power to settle only "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. SSHC bears the burden to establish standing. <u>Blum v. Holder</u>, 744 F.3d 790, 795 (1st Cir. 2014) ("'"party invoking federal jurisdiction bears the burden of establishing" standing'"). The inquiry entails "a familiar triad" of "injury, causation, and redressability." <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 71 (1st Cir. 2012). More specifically, it requires a "concrete and particularized injury, a causal connection between that injury and the wrongdoer's conduct, and the likelihood that prevailing in the action will rectify the injury in some way." <u>U.S. v. $8,440,190.00 in U.S. Currency</u>, 719 F.3d 49, 57 (1st Cir. 2013). To satisfy "the 'irreducible constitutional minimum of standing,'" a "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to" the defendant and "likely to be redressed by a favorable judicial decision." <u>Lexmark International, Inc. v. Static Control Components, Inc.</u>, 134 S.Ct. 1377, 1386 (2014) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).

Standing also has "a prudential component." <u>Gianfrancesco v. Town of Wrentham</u>, 712 F.3d 634, 637 (1st Cir. 2013); <u>Katz v. Pershing, LLC</u>, 672 F.3d at 72. These prudential concerns "'require a plaintiff to show that his claim is premised on his

own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked.'" Katz v. Pershing, LLC, 672 F.3d at 72 (quoting Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006)).

Defendants submit that SSHC did not suffer an "injury in fact" because it is not a party to the contract or a third party beneficiary to the contract. An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. at 560 (citations and internal quotation marks omitted); see Katz v. Pershing, LLC, 672 F.3d at 71. A concrete and particularized injury "demands that a plaintiff must have personally suffered some harm." Katz v. Pershing, LLC, 672 F.3d at 71; see also Benjamin v. Aroostook Medical Center, Inc., 57 F.3d 101, 104 (1st Cir. 1995) (standing determines "whether a specific person is the proper party to bring a particular matter to the Court for adjudication"). "The invasion of a common-law right (including a right conferred by contract) can constitute an injury sufficient to create standing." Katz v. Pershing, LLC, 672 F.3d at 72.

When considering a pre-discovery motion to dismiss for lack of standing under Rule 12(b)(1), "the better view is that when a plaintiff generally alleges the existence of a contract, express

14

or implied, and a concomitant breach of that contract, her pleading adequately shows an injury to her rights." Id. at 70, 72 (contrasting this "better view" to a more in depth inquiry into the merits of a claim). Here, the parties have made initial disclosures and engaged in a moderate amount of discovery. Like a Rule 12(b)(6) motion, however, the current Rule 12(c) review is confined to the pleadings and attached exhibits.

Massachusetts state law applies because the subject matter of the contract is to repair a Massachusetts building and Artech performed the contract in Massachusetts. SSHC bears the underlying burden to show it is a party to the contract.[7] See Stern v. Lieberman, 29 N.E.2d 839, 841-842 (Mass. 1940); see also Atlantic Microwave Corp. v. Whalen, 2011 WL 4463492, at *2 (Mass.App.Div. Sept. 20, 2011) ("AMC was required to establish its right to enforce the employment offer letter either as a party to the agreement, or as an intended third-party beneficiary").

A corporation, including a religious corporation such as SSHC, may adopt names other than its incorporated name. Women's Mutual Benefit Society, St. Mary of Carmen, of Newton v. Catholic Society Feminine of Maria S.S. of Monte Carmelo, of Newton, 23 N.E.2d 886, 888 (Mass. 1939) ("[t]here is no statutory

_____

[7] As a religious corporation, SSHC has the power to enter into contracts. See Mass. Gen. L. ch. 67, § 23; Mass. Gen. L. ch. 180, § 6; Mass. Gen. L. ch. 156B, § 9.

prohibition whereunder a corporation may not use a name other than its own apart from the matter of infringing upon another's right to use a name"); Minot v. Curtis, 7 Mass. 441, 443-444 (Mass. 1811).[8]  Further, a corporation may conduct business under a trade name and enter into contracts "if unaffected by fraud." William Gilligan Co. v. Casey, 91 N.E. 124, 124-125 (Mass. 1910); Atlantic Microwave Corp. v. Whalen, 2011 WL 4463492, at *2 ("'corporation may assume or be known by different names, and contract accordingly, and that contracts so entered into will be valid and binding if unaffected by fraud'") (quoting Gilligan, 91 N.E. at 124-125, in parenthetical).  The *legal* principle that SSHC may enter into contracts under a trade name, however, does not automatically mean that SSHC did so under the *facts* of this case.

Turning to the contract, it is undisputed that Lofgren made

---

[8]  In Minot, the plaintiff attended a Baptist church incorporated as the "Baptist Society in Brunswick" but was subject to  a proportional share of the tax lodged against the parish by the "assessors of the Congregational parish in Brunswick."  Minot v. Curtis, 7 Mass. at 443.  The latter name was one of several names used by the church parish in lieu of its incorporated name.  Id.  The Massachusetts Supreme Judicial Court ("SJC") in Minot rejected the plaintiff's arguments to avoid the tax because the church had varied its name so often "that they could not be said to have any fixed name at all" and that the defendants in the tax bill referred to themselves as "the assessors of the congregation parish."  Id.  In finding the plaintiff subject to the tax, the court determined that, "As to the fact of this parish having used several names in its public proceedings, we know not why corporations may not be known by several names . . . .."  Id. at 444.

16

the contract in a representative capacity as an agent of at least

one principal. He signed the contract as "Parish Council

President" underneath the line reading, "Purchaser

Representative: Panagia Greek Orthodox Church." (Docket Entry #

9-13); see, e.g., Marshall v. Stratus Pharmaceuticals, Inc., 749

N.E.2d 698, 705 (Mass.App.Ct. 2001) (Keith Pyle's signature

"'For: Stratus Pharmaceuticals, Inc., s/Keith Pyle, Title:

President' . . . makes clear that Pyle was contracting on behalf

of Stratus"). The circumstances thus involve an agent

representing one or more principals and a dispute regarding which

principal was the contracting party. See Lunn & Sweet Co. v.

Wolfman, 167 N.E. 641, 645 (Mass. 1929). Defendants contend that

Panagia Greek Orthodox Church is an entity separate and apart

from SSHC and, as such, it is the contracting party based on the

language in the contract and the failure to refer to SSHC in any

of the related documents. SSHC maintains that Panagia Greek

Orthodox Church is another name for SSHC and that SSHC therefore

entered into the contract with Artech.

Ordinarily, in "a case where the identity of one of two

possible persons, each represented by the same agent," is

disputed, the actual contracting party is "ascertained from all

the circumstances." Lunn & Sweet Co. v. Wolfman, 167 N.E. at

645; see Interstate Litho Corp. v. Brown, 255 F.3d 19, 26 (1st

Cir. 2001) ("any questions as to whether Brown," as opposed to

17

Integra Technical Services, "was indeed a proper party to the
purported contract with Interstate were questions of fact for the
jury").[9]  The circumstances show that SSHC was well known in the
community as Panagia Church and, by reasonable inference, as
Panagia Greek Orthodox Church.  (Docket Entry # 9, ¶¶ 3, 11, 13).
Drawing reasonable inferences, it was commonly known in the
community that Panagia Greek Orthodox Church referred to SSHC.
The language of the contract refers to the "purchaser
representative" as Panagia Greek Orthodox Church, a commonly
known reference to SSHC.  The subject matter of the contract was
to repair the church building which SSHC owned.  (Docket Entry #
9, ¶¶ 3, 10, 11).  Drawing reasonable inferences, Bourikas, whose
name "Peter" appears on the signature page of the contract, was
the Chair of the Building Committee of the Board of Stewards of
SSHC.  Conversely, there is ample support to find that Panagia
Greek Orthodox Church, as opposed to SSHC, was the contracting
party.  First and foremost, the contract refers to Panagia Greek
Orthodox Church and does not refer to SSHC.  See, e.g., Atlantic
Microwave Corp. v. Whalen, 2011 WL 4463492, at *1-2 & n.4
(conflicting evidence at trial regarding whether AMC had right to
enforce contract warranted trial court's denial of motion for

---

[9]  The First Circuit in Litho cited Associates  Discount
Corp. v. Haynes Garage, Inc., 24 N.E.2d 685, 687-88 (Mass. 1939),
which cited Lunn & Sweet Co. v. Wolfman, 152 N.E. 893, 894-895
(Mass. 1926) ("Lunn I"), the first of the two decisions by the
SJC in the Lunn litigation.

directed verdict).

Accordingly, on a Rule 12(c) motion and for purposes of standing *only*, it is plausible that SSHC was the principal that contracted with Artech. At this stage, the record therefore adequately supports that SSHC, which owns the building subject to the deficient repairs, personally suffered the harm or injury in fact and is the proper party to enforce the contract. The Rule 12(c) record is sufficient to satisfy the constitutional injury and prudential components of standing.

Defendants' remaining arguments fail to convince this court that standing is absent at this stage in the proceedings. Defendants assert that <u>Atlantic Salmon A/S v. Curran</u>, 591 N.E.2d 206, 209 (Mass.App.Ct. 1992), establishes that a contract executed by one individual as a representative of an entity can bind only that entity which, in this case, was Panagia Greek Orthodox Church. (Docket Entry # 33, p. 12). <u>Atlantic Salmon</u>, however, does not articulate this principle at the page defendants cite. Instead, it stands for the principle that:

> "The duty rests upon the agent, if he would avoid personal liability, to disclose his agency, and not upon others to discover it. It is not, therefore, enough that the other party has the means of ascertaining the name of the principal; the agent must either bring to him actual knowledge or, what is the same thing, that which to a reasonable man is equivalent to knowledge or the agent will be bound."

<u>Id.</u> (quoting 1 <u>Mechem on Agency</u> § 1413 (2nd ed. 1914)). The agent's use of the corporation's trade name in <u>Atlantic Salmon</u>

19

was not sufficient to disclose the identity of the principal "so as to protect [the agent] from personal liability." Id.

First, Atlantic Salomon is distinguishable for the same reasons the court in Perotta ex rel. Tory Pines Enterprise Realty Trust v. Summit Home Loans, Inc., 2005 WL 352859, at *3 (D.Mass. Feb. 11, 2005), distinguished the case. All of the cases cited by the court in Atlantic Salmon "share a common theme-in each case the trade name was meant to disguise the identity of the principal for some fraudulent purpose, or was asserted to avoid a legitimately incurred debt or obligation, or was injected in a misleading fashion to entice the extension of credit." Perotta ex rel. Tory Pines Enterprise Realty Trust v. Summit Home Loans, Inc., 2005 WL 352859, at *3 (citing and paraphrasing each of the cases cited in Atlantic Salmon, 591 N.E.2d at 208).[10] The facts in the amended complaint show no evidence of fraud or that SSHC purposefully concealed its real name to obtain an extension of credit.

Second, Atlantic Salomon is distinguishable because it

---

[10] The SJC in Lunn was also careful to point out that the case did not involve an attempt "to bind the other party to the contract by undisclosed purposes or secret designs." Lunn & Sweet Co. v. Wolfman, 167 N.E. at 645. As noted in the earlier SJC decision in Lunn I, "There was no fraudulent concealment of the identity of the plaintiff" and "the defendants would have been as willing to contract with and receive goods from the new company as the old" and the identity of which "contracting party was a matter of indifference to the defendants." Lunn & Sweet Co. v. Wolfman, 152 N.E. at 894.

involved an agent seeking to avoid personal liability under a contract in which the contracting party was a partially disclosed or undisclosed principal. See Atlantic Salmon A/S v. Curran, 591 N.E.2d at 206-207. Lofgren, the agent here, is not attempting to avoid personal liability and defendants are not seeking to hold him liable as an individual.

Contrary to defendants' other argument, a failure to file a doing business as certificate in accordance with Massachusetts General Laws chapter 110, section five, "does not render a contract void." Farnum v. Bankers' & Shippers' Ins. Co. of New York, 183 N.E. 718, 720 (Mass. 1933); see Huey v. Passarelli, 166 N.E. 727 (Mass. 1929). The purported judicial admissions made by SSHC's counsel are not necessarily clear. See Butler v. Deutsche Bank Trust Co. Americas, 748 F.3d 28, 39 (1st Cir. 2014) ("'[t]o be binding, a judicial admission must be clear'"); see also Harrington v. Nashua, 610 F.3d 24, 31 (1st Cir. 2010) (judicial admissions must be statements of fact rather than statement of legal theories); Commercial Money Center, Inc. v. Illinois Union Insurance Co., 508 F.3d 327, 336 (6th Cir. 2007) ("[j]udicial admissions of fact must be deliberate and clear, while legal conclusions are rarely considered" as "binding judicial admissions").

In sum, SSHC has standing as a party to the contract at this stage in the proceedings. As an issue of subject matter

jurisdiction, a party may raise the issue of standing "'at any stage of the litigation.'" Bishop v. Smith, 2014 WL 3537847, at *4 (10th Cir. July 18, 2014); see Lujan v. Defenders of Wildlife, 504 U.S. at 561 (the plaintiff must support standing "with the manner and degree of evidence required at the successive stages of the litigation").

## II. Real Party in Interest

Defendants next assert that Panagia Greek Orthodox Church is the only "real party interest." (Docket Entry # 32, ¶ 2) (Docket Entry # 33, pp. 13-14). According to defendants, "Panagia was the counterparty to the contract with Artech, and would be the only entity or unincorporated association with contractual rights potentially sufficient to bring suit." (Docket Entry # 14, p. 14). Because the citizenship of Panagia Greek Orthodox Church "depends on the citizenship of all of its members," defendants argue that SSHC fails to show complete diversity and the suit is therefore subject to dismissal. (Docket Entry # 33, pp. 13-14).

Rule 17(a) instructs that, "An action must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). The function of the rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed.R.Civ.P. 17(a), Advisory Committee Notes, 1966 Amendment; Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico

<u>Marine Management, Inc.</u>, 620 F.2d 1, 4 (1ˢᵗ Cir. 1980).  The
effect of the rule "is that the action must be brought by the
person who, according to the governing substantive law, is
entitled to enforce the right."  6A Charles Alan Wright, Arthur
R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1543
(2010).  A real party in interest is therefore "the person
holding the substantive right sought to be enforced."  <u>Lopes v.
JetSetDC, LLC</u>, 2014 WL 775243, at *6 (D.D.C. Feb. 19, 2014).  A
party that does "not possess[] a right under substantive law is
not the real party in interest with respect to that right and may
not assert it."  <u>Farrell Const. Co. v. Jefferson Parish, La.</u>, 896
F.2d 136, 140 (5ᵗʰ Cir. 1990).  Where, as here, diversity
jurisdiction applies, state law "determine[s] which party holds
the substantive right."  <u>Id.</u>; <u>Stichting Ter Behartiging Van de
Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt
International B.V. v. Schreiber</u>, 407 F.3d 34, 49 (2ⁿᵈ Cir. 2005)
(examining "state law to determine whether Stichting properly
possesses the right of action that it asserts in this case"); <u>see</u>
6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal
Practice and Procedure</u> § 1564 (2010) (if "organization lacks
capacity to litigate in the state courts, it also will be barred
from a federal forum in that state").

In Massachusetts and subject to certain statutory
exceptions, "an unincorporated association cannot be a party to

litigation." Save the Bay, Inc. v. Department of Public Utilities, 322 N.E.2d 742, 750 (Mass. 1975); Maria Konopnicka Soc'y of Holy Trinity Polish Roman Catholic Church v. Maria Konopnicka Soc'y, 120 N.E.2d 769, 771 (Mass. 1954) (voluntary unincorporated associations, one affiliated with church, are not proper parties to a suit); Tyler v. Boot and Shoe Workers' Union, 188 N.E. 509, 510 (Mass. 1933) (voluntary unincorporated association "cannot be a party to litigation").  An exception exists that allows a suit against an association "in an action at law" for liabilities under a contract incurred by a "duly authorized officer of the association."  Mass. Gen. L. ch. 182, § 6.  With respect to the ability to bring suit, representative members of an association may bring a class action.  See Mass.R.Civ.P. 23.2.  It is also "well-established that a trade name can neither sue nor be sued."  Diesel Machinery, Inc. v. Manitowoc Crane Group, 777 F.Supp.2d 1198, 1213 (D.S.D. 2011) (collecting cases).  As an unincorporated association or as a trade name, Panagia Greek Orthodox Church does not hold the substantive right under state law to bring an action on the contract.  See generally Lease America Org. Inc. v. Rowe Int'l Corp., 2014 WL 1330928, at *5 (D.Mass. March 31, 2014) (because entity that signed contract "no longer exists and Lease America has assumed all of its rights and obligations, Lease America is the real party in interest"); Reynolds v. S & D Foods, Inc., 822

F.Supp. 705, 708 (D.Kan. 1993) ("if a partnership lacks capacity to litigate in the state courts, it also will be barred from a federal forum in that state").

As to the function or purpose of Rule 17(a), there is little risk that defendants will face a subsequent suit based on the contract brought by Panagia Greek Orthodox Church because it cannot file suit to enforce the contract.  See generally 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1552 (2010) ("[a]bsent statutory authority, however, an association is not the appropriate party for bringing suit to assert the personal rights of its members").  This action is therefore not subject to dismissal for failure to name Panagia Greek Orthodox Church as the real party in interest under Rule 17.

III.  Required Party under Rule 19

Defendants submit that Panagia Greek Orthodox Church, Cave, Jim's Pro, Foley and Flynn are all required parties under Rule 19(a) and that joinder is not feasible under Rule 19(b).  Accordingly, they move to dismiss this action "under Rules 19 & 12."[11]  SSHC contends that none of these parties are required within the meaning of Rule 19.

As set out in the text of the rule, the analysis is

---

[11]  Rule 12(b)(7) provides the applicable subsection of Rule 12 because it applies to a motion asserting a "failure to join a party under Rule 19."  Fed.R.Civ.P. 12(b)(7).

25

threefold. First, the court determines if the absent party is a "required party" under Rule 19(a). Second, the court ascertains whether joinder of the required party "is feasible." Fed.R.Civ.P. 19(b). Third, if joinder is not feasible, the court undertakes an equitable balancing of certain factors to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b). Succinctly stated, Rule 19:

> provides for the joinder of such "necessary" parties when feasible. It then provides for the dismissal of suits when the court determines that the joinder of the "necessary" parties is not feasible, but that they are, nonetheless, so "indispensable" that the suit must not be litigated without them.

Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) (quoting former Rule 19 prior to 2007 amendment).[12]

Overall, a court must consider the policies underlying Rule 19 in conducting the analysis. Id. These policies are: "'the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding

---

[12] Rule 19 underwent certain stylistic changes effective December 1, 2007. See Picciotto v. Continental Cas. Co., 512 F.3d at 14 n.8 (noting that "substance of the rule has not changed"). "[T]he word 'required' replaced the word 'necessary' in subparagraph (a)." Republic of Philippines v. Pimentel, 553 U.S. 851, 855 (2008). "[T]he word 'indispensable'" was deleted. Id. at 856.

the case without them.'" Id. (quoting Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1ˢᵗ Cir. 1982)).

Turning to the task, Rule 19(a) depicts three criteria, any one of which, if satisfied, results in deeming the absent party a "required party." See id. at 16 & n.11. A "required party" is a party who:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1). Subsection (a)(1)(A) focuses on the ability to accord complete relief "among those already parties" in the suit. Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d 1, 10 (1ˢᵗ Cir. 2013) (emphasis omitted). The two alternative means to qualify as a "required party" under subsection (a)(1)(B) involve "protecting the interests of the absent party." Id. A suit between the existing parties will provide "complete relief" even if a dispute with the absent party remains unresolved. See id. (paraphrasing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 385 (2ⁿᵈ Cir. 2006), in parenthetical that, Rule 19(a)(1) satisfied if existing

27

parties can "obtain complete relief as to each other without absent party's presence although a dispute with absent party may be left unresolved").

Examining Rule 19(a)(1)(A) with respect to Panagia Greek Orthodox Church, a determinative issue in this case is the identity of the contracting party. If this suit proceeds by SSHC without Panagia Greek Orthodox Church, a jury may determine that SSHC is not the contracting party and that the parties intended to enter into a contract between Artech and Panagia Greek Orthodox Church because the latter is the designated "purchaser representative" in the contract. The fact that a dispute may remain between Artech and Panagia Greek Orthodox Church (or its members who contributed to the repairs) still allows the court to accord complete relief between the existing parties. See Bacardí Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 10. For example, if SSHC is not a party or an intended third party beneficiary, it cannot recover on the breach of contract claim and the related contract claims in counts II, III and V. Conversely, if a jury determines that SSHC is the contracting party, then the court can likewise accord complete relief between SSHC and Artech. Panagia Greek Orthodox Church's absence does not prevent the court from determining the relief as between SSHC and Artech. Hence, Panagia Greek Orthodox Church is not a required party under Rule 19(a)(1)(A).

Turning to Rule 19(a)(1)(B)(i), the interests of an absent entity are not impaired when the entity has "'virtually identical' interests" to an existing party. Id. at 10-11. For example, a subsidiary is not a required party when the parent is an existing party with identical interests. See id. at 11; Pujol v. Shearson American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989). The Bacardí court further noted that the absent entity did not assert or claim "an interest which will be impaired." Bacardí Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 10; see also U.S. v. San Juan Bay Marina, 239 F.3d 400, 406 n.6 (1st Cir. 2001) (noting, among other facts, that "in light of the Commonwealth's decision not to intervene, we do not find the Commonwealth to be a necessary party").

Here, the interests of Panagia Greek Orthodox Church are identical to those of SSHC. Both entities seek redress for the delinquent or negligent repairs performed under the contract. Moreover, like the absent entity in Bacardí, Panagia Greek Orthodox Church does not claim an interest that will be impaired by its absence.

Rule 19(a)(1)(B)(ii), in turn, protects Artech from "a substantial risk of double, multiple, or otherwise inconsistent obligations." Fed.R.Civ.P. 19(a)(1)(B)(ii). The subsection does not guard against inconsistent adjudications. See Bacardí Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 12.

29

"Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998); accord Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 12 (quoting Delgado v. Plaza Las Americas, Inc., 139 F.3d at 3). "Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." Delgado v. Plaza Las Americas, Inc., 139 F.3d at 3; accord Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 12 (quoting Delgado v. Plaza Las Americas, Inc., 139 F.3d at 3). A risk to a defendant who, after successfully defending "against a party[,] may be found liable to another party in a subsequent action arising from the same incident" presents "a risk of inconsistent adjudications or results" and, as such, "does not necessitate joinder of all of the parties into one action" under Rule 19(a). Delgado v. Plaza Las Americas, Inc., 139 F.3d at 3. Here too, the risk that Artech may be found liable to members of the Panagia Greek Orthodox Church under the contract after Artech successfully defends against the claims by SSHC presents, at most, a risk of inconsistent adjudications.

The subsection also protects against a substantial risk of incurring double liability or multiple lawsuits. Fed.R.Civ.P.

19(a)(1)(B)(ii); see, e.g., Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamon, 728 F.Supp.2d 14, 29 (D.P.R. 2010). If SSHC recovers a judgment against Artech, there is little if any risk that Artech would face a second suit and incur double liability regarding the contract. The probable privity between SSHC and the members of Panagia Greek Orthodox Church more than likely bars a subsequent adjudication of claims or issues that were or could have been determined in this suit.[13] See generally Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d at 411.

In short, Panagia Greek Orthodox Church is not a required party under Rule 19(a). It is therefore not necessary to address whether its joinder is feasible and, if not feasible, whether this action should proceed among the existing parties. See In re Olympic Mills Corp., 333 B.R. 540, 551 (B.A.P. 1st Cir. 2005) ("analysis ends with respect to DCV" because "DCV is not a necessary party under Rule 19(a)").

Turning to Cave, he was the "Artech Project Manager" and had the responsibility to complete the project on schedule. (Docket Entry ## 9-13, 33-1). He hired the individuals who performed the work and managed their time. (Docket Entry # 33-1). For the interior plaster work, he hired James J. Amirault

---

[13] The above statement is not an indication that privity exists. Any such determination is premature. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 410 (3rd Cir. 1993).

31

("Amirault") of Jim's Pro. (Docket Entry # 33-1). Defendants reason that the roof remained defective after Cave and Jim's Pro completed their repairs and even after Foley and Flynn performed their work on the building.[14]

"[C]o-obligors generally are not indispensable parties in contract disputes that do not involve reformation, cancellation, rescission, or otherwise challenge the validity of the contract." In re Olympic Mills Corp., 477 F.3d 1, 10 (1st Cir. 2007); see Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 184 F.Supp.2d 55, 78-79 (D.Mass. 2001), rev'd on other grounds, 290 F.3d 42 (1st Cir. 2002). Thus, even if Cave is considered a joint obligor and a required party, his absence does not require dismissal under Rule 19(b).

Moreover, Cave managed the project but he was not a signatory to the contract or an obligor. Rather, he was either an employee of Artech or a general contractor for the project with a separate contract with Artech. His presence is not necessary to accord complete relief between SSHC and Artech regarding any of the claims.

As to subsection 19(a)(1)(B), Cave does not seek to intervene in this action and he is not asserting or claiming an

---

[14] The amended complaint does not allege that Flynn did any repairs or work on the church building. Rather, Flynn submitted an estimate for roof and flashing repairs to Foley and, in July 2011, Foley included the estimate in a proposal to Lofgren. (Docket Entry # 9, ¶ 52) (Docket Entry # 9-29).

interest.  See Fed.R.Civ.P. 19(a)(1)(B); Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 10 (noting that absent entity did not claim "an interest which will be impaired"); U.S. v. San Juan Bay Marina, 239 F.3d at 406 n.6 (noting "Commonwealth's decision not to intervene" as supporting finding it was not a required party).  In addition, his interests align with Artech's interests.  Both Cave and Artech seek to avoid liability on the basis that Cave, and the subcontractors he hired for the exterior waterproofing, performed the repairs in accordance with the contract and in a workmanlike manner.  Artech also seeks to avoid liability for Cave's statement that he made the Narthrax "'tight'" (Docket Entry # 9, ¶ 28) either because Cave did not make this representation or because it is not encompassed within the work designated in the contract.  Specifically, Artech attempts to avoid liability on the basis that the contract did not include repairs to the roof and that the roof continues to remain defective.

At a minimum, when an existing party and an absent party have "'virtually identical' interests," the absent's party's interests are not impaired or impeded under Rule 19(a)(1)(B)(i).  Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 11 ("[w]e do not suggest that the test requires 'virtually identical' interests, only that such is the situation here").  Under the contract, Artech guaranteed "all workmanship for a

period of one year." (Docket Entry # 9-13). Cave and the subcontractors or individuals he hired performed that work. Artech's interest is avoiding liability under the guarantee by presenting evidence that it performed the work in a quality manner aligns precisely with the interests of Cave to avoid liability by showing that he acted in a workmanlike manner. Likewise, the interests of both Cave and Artech are to avoid liability because the scope of the work under the contract did not extend to the roof.

Defendants correctly point out that impairment of an absent person's ability to settle a dispute is a proper consideration under Rule 19(a)(1)(B)(i). (Docket Entry # 33, pp. 15-16). "Settlement position is a valid consideration in the practical inquiry required by Rule 19(a)(2)(i) because, even without a direct preclusive effect, an adverse judgment could be 'persuasive precedent in a subsequent proceeding, and would weaken the absent party's bargaining position for settlement purposes.'" Picciotto v. Continental Cas. Co., 512 F.3d at 16 (quoting Acton Co. v. Bachman Foods, Inc., 668 F.2d at 78) (brackets omitted). Because of the close alignment of Artech's and Cave's mutual interests, however, proceeding without Cave does not impair or impede his ability to settle a future suit. See Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d at 11. Inasmuch as Cave's interests are more than adequately protected

34

by Artech, Cave is not a required party under Rule
19(a)(1)(B)(i).

As to Rule 19(a)(1)(B)(ii), Cave's absence does not leave
defendants subject to a substantial risk of double, multiple, or
otherwise inconsistent obligations. Again, "'[i]nconsistent
obligations'" under Rule 19(a)(1)(B)(ii) "'are not the same as
inconsistent adjudications or results.'" <u>Bacardi Int'l Ltd. v.
V. Suarez & Co., Inc.</u>, 719 F.3d at 12 (quoting <u>Delgado v. Plaza
Las Americas, Inc.</u>, 139 F.3d at 3) (brackets and ellipses
omitted). Any liability on the part of Cave to Artech resulting
from Cave's breach of an alleged contract to perform the work in
the contract between Artech and SSHC in a satisfactory manner
would reduce Artech's damages. As noted above, defendants raise
claims for contribution and indemnity against Cave in the
proposed third party complaint. A defendant entitled to
contribution or indemnity, however, is not subjected to double or
multiple obligations under Rule 19(a)(1)(B)(ii) because his
liability is joint and several for the entire amount. <u>See
Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 184
F.Supp.2d at 82. As explained in <u>Daynard</u> in denying required
party status to a co-obligor under a contract:

> "The possibility that the defendant may bear the whole loss
> if it is found liable and the absent defendant later is
> found *not* liable is not the equivalent of double liability.
> It is instead a common result of joint and several liability
> . . . Inherent in the concept of joint and several liability
> is the right of a plaintiff to satisfy its whole judgment by

> execution against any one of the multiple defendants who are
> liable to him, thereby forcing the debtor who has paid the
> whole debt to protect itself by an action for contribution
> against the other joint obligors."

Id. (quoting Janney Montgomery Scott, Inc. v. Shepard Niles,
Inc., 11 F.3d at 412) (brackets omitted).

Even if Cave were a required party and his joinder is not
feasible because of his Massachusetts citizenship, the prejudice
to him of proceeding in his absence is not substantial. Artech
will effectively present his interests. See National Association
of Chain Drug Stores v. New England Carpenters Health Benefits
Fund, 582 F.3d 30, 43-44 (1st Cir. 2009) ("interests of the
absent pharmacies and PBMs have been vigorously addressed by
arguments and evidence from pharmacy interests who were and are
present"). Cave is within the subpoena power of this court and
is therefore available to testify for either SSHC or Artech
thereby reducing any prejudice to the existing parties. See
Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1345
(11th Cir. 2011). It is also "'generally recognized that a
person does not become indispensable to an action to determine
rights under a contract simply because that person's rights or
obligations under an entirely separate contract will be affected
by the result of the action.'" Ferrofluidics Corp. v. Advanced
Vacuum Components, Inc., 968 F.2d 1463, 1472 (1st Cir. 1992)
(quoting Helzberg's Diamond Shops, Inc. v. Valley West Des Moines
Shopping Center, Inc., 564 F.2d 816, 820 (8th Cir. 1977)). "[I]f

36

one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20." Pujol v. Shearson American Express, Inc., 877 F.2d at 137 (citation omitted); see Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 677 (1st Cir. 1994) ("joint tortfeasors . . . are generally not indispensable parties"); Austin v. Unarco Industries, Inc., 705 F.2d 1, 5 (1st Cir. 1983) ("[j]oint tortfeasors are not considered indispensable parties"). SSHC is not prejudiced because it can assert the contract and negligence claims against Artech. Whatever prejudice to Artech in proceeding without Cave as a party is inherent in the principle of joint and several liability. See Austin v. Unarco Industries, Inc., 705 F.2d at 5 (absent party not indispensable partly because "[w]hatever prejudice results to Raybestos from being forced to proceed without Unarco is simply that inherent in the principle of joint and several liability").

As to Jim's Pro, Amirault was a subcontractor working for Cave. He performed the interior plastering work in certain areas of the church. (Docket Entry # 33-1). Foley, in turn, inspected the church in the fall of 2010 and performed approximately $9,000 worth of repairs to the roof after Artech completed its work and after the exterior water intrusion reemerged. (Docket Entry # 9,

¶¶ 39, 50, 52) (Docket Entry # 9-35). Defendants' argument that
proceeding without Jim's Pro and Foley negatively impacts their
settlement positions fails because Artech's interests align
precisely with the interests of Jim's Pro and, to a lesser but
sufficient degree, Foley's. Like Jim's Pro and Foley, Artech
wishes to establish that it satisfactorily performed the contract
and did not negligently cause any property damage to the church.
For reasons already explained with respect to Cave, the
contribution and indemnity claims defendants seek to bring
against Jim's Pro and the contribution claim Artech seeks to
bring against Foley do not make either a required party or a
party whose inability to join this action leads to a dismissal
under Rule 19(b).

It is true that Artech's interests potentially diverge from
Foley's interests insofar as Artech seeks to lay the blame for
the exterior water intrusion on a defective roof, eaves and
flashing. Foley performed repairs to the roof in late 2010. The
exterior water intrusion, however, existed before and after
Foley's work. In fact, the exterior water damage continued after
Artech completed the repairs and before Foley performed the roof
repairs. There is no indication that Foley's work increased or
contributed to the damage. A consulting report prepared for SSHC
indicates that Foley's work extending flashing did not reduce the

water leakage.[15] (Docket Entry # 9-33). In fact, Foley presented Lofgren with an estimate that included repairs to the roof and flashing months after Foley performed the roof repairs, a position similar to Artech's position that the roof remained the source of the water intrusion and was defective. Thus, proceeding without Foley does not impair his ability to protect his interests or leave Artech with a risk of incurring double, multiple or inconsistent obligations.

As a final matter, defendants maintain that Flynn is a required party whose joinder mandates a dismissal of this action. Defendants reason that the church hired Flynn to perform roof and flashing repairs after Artech completed its work and that SSHC complains about continued and ongoing water leaks and damage to the church building. As with Cave, Jim's Pro and Foley, defendants seek to assert a contribution claim against Flynn. Flynn, however, did not perform any work for SSHC. He simply provided an estimate to Foley for roof and flashing repairs totaling $36,000.

An absent person who did not engage in the wrongdoing is not

---

[15] As set out in the proposed third party complaint, Foley was purportedly "hired to perform roofing, sealing and flashing work." (Docket Entry # 33-3, ¶ 39). Foley and Flynn are allegedly "responsible at least in part for water damage at the church" because they "performed work on the church building, and the engineer's report which specifically found the sealing and flashing work performed by Foley and Flynn to be defective." (Docket Entry # 33-3, ¶ 39). The actual document, however, does not place any blame on Foley or Flynn.

a necessary party to accord complete relief to the existing parties. <u>Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC</u>, 683 F.Supp.2d 102, 112-113 (D.Mass. 2009). As explained in <u>Plymouth</u>:

> [T]here is no wrongdoing alleged on the part of Mr. Fung in his individual capacity. He is not necessary for any requested relief, and is not claiming an interest relating to the subject of the action in his individual capacity. Therefore, he is not a necessary party.

<u>Id.</u> Here too, Flynn does not claim an interest in the subject of the proceeding and his absence does not leave Artech subject to double, multiple or inconsistent obligations.

In sum, dismissal is not warranted under Rule 12(b)(7) or Rule 19(b). Panagia Greek Orthodox Church, Cave, Jim's Pro, Foley and Flynn are not required parties under Rule 19(a)(1).

IV.  <u>Third Party Complaint</u>

Defendants seek leave to file a third party complaint against Cave, Jim's Pro, Foley and Flynn under Fed.R.Civ.P. 14 ("Rule 14"). The proposed third party complaint includes claims by defendants against Cave for contribution and indemnity (counts I and II) and breach of an implied warranty (Count IV) and by Artech against Cave for breach of contract and breach of the implied covenant of good faith (Count III). Counts V and VI are contribution and indemnity claims brought by defendants against Jim's Pro. Counts VII and VIII respectively set out contribution claims against Foley and Flynn.

SSHC maintains that a third party complaint will prejudice
SSHC and unduly delay these proceedings. It also submits that
the motion is untimely and will unduly complicate this case as
well as significantly increase litigation expenses to SSHC.

Rule 14(a) provides that a defendant "may implead any
non-party 'who is or may be liable to the third-party plaintiff
for all or part of the plaintiff's claim against the third-party
plaintiff.'" Lehman v. Revolution Portfolio L.L.C., 166 F.3d
389, 393 (1st Cir. 1999) (quoting Rule 14(a) with emphasis
omitted). Where, as here, defendants filed the motion more than
14 days after serving their original answer, leave of court is
required. Fed.R.Civ.P. 14(a).

The determination of whether to allow leave "is left to the
informed discretion of the district court, which should allow
impleader on any colorable claim of derivative liability that
will not unduly delay or otherwise prejudice the ongoing
proceedings." Lehman v. Revolution Portfolio L.L.C., 166 F.3d at
393. Sufficient prejudice may exist "when bringing in a third
party will introduce unrelated issues and unduly complicate the
original suit." Charles Alan Wright, Arthur R. Miller & Mary Kay
Kane Federal Practice and Procedure § 1443 (2010); see AIG Europe
Ltd. v. General System, Inc., 2014 WL 3671566, at *7 (D.Md. July
22, 2014) ("relevant factors" under Rule 14 "include the
introduction of unrelated issues or the undue complication of the

original suit"). Although the standard under Rule 14(a) is liberal, "the court need not grant leave if the claim is futile." Davis v. Protection One Alarm Monitoring, Inc., 2005 WL 3728711, at *2 (D.Mass. Nov. 2, 2005); see U.S. v. Sensient Colors, Inc., 2009 WL 394317, at *11 (D.N.J. Feb. 13, 2009) (proposed third-party complaint denied as futile because it sought to impose non-derivative, independent claim against third party defendant); accord Fed.R.Civ.P. 14, Advisory Committee Notes, 1963 Amendment. Overall, a court "must oversee third-party practice with the core purpose of Rule 14(a) in mind: avoiding unnecessary duplication and circuity of action." Lehman v. Revolution Portfolio L.L.C., 166 F.3d at 394-395.

With the exception of Flynn and Foley, the derivative claims for contribution and indemnity against Cave and Jim's Pro are appropriate. A defendant's third party claims for contribution and indemnity claims often fall within the ambit of Rule 14(a). See Babb v. Pacer-Pittman Propane, LLC, 2012 WL 5844999, at *1 (N.D.Miss. Nov. 19, 2012) (Rule 14 is "an appropriate mechanism for joining nonparties where there is a claim for indemnity or contribution"); see, e.g., Lehman v. Revolution Portfolio L.L.C., 166 F.3d at 393-394 (allowing contribution and indemnity claims against third party defendant). Allowing these third party claims serves the purposes of Rule 14 of avoiding duplicative and circuitous proceedings. The claims do not unduly complicate

42

these proceedings because the direct claims by SSHC against Artech all involve the repairs at the church which Cave and Jim's Pro performed. Prejudice is lacking because the third party claims overlap factually and legally with claims in the first amended complaint. Hence, although this court considers the lengthy 15 month delay between the time defendants filed an answer to the first amended complaint and sought leave to file the third party complaint, the delay is not sufficiently prejudicial and fails to override the fact that impleading Cave and Jim's Pro directly serves the purposes of Rule 14.

As to Foley, the alleged prevalence of water before and after he performed work in late 2010 does not raise a colorable claim that he is at fault and responsible for any damage to the church or any of Artech's or Cave's damage to the church. Although the proposed counterclaim states that the engineer's report found the work performed by Foley was defective, the actual document does not place any blame on Foley. See generally Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (noting, in context of Rule 12(b)(6), that when "'written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations'"). Moreover, adding Foley will unduly complicate these proceedings.

Turning to Flynn, his liability is completely absent. Under

the documentary evidence he simply provided an estimate to Foley which Foley inserted into an estimate provided to SSHC in July 2011.  Massachusetts law provides a right of contribution "where two or more persons become jointly liable in tort for the same injury to person or property."  Mass. Gen. L. ch. 231B, § 1. Count VIII alleges that Flynn was negligent in the performance of work on the church.  Because the facts uniformly show that he did not perform any work, the counterclaim against Flynn is futile.

The remaining claims are against Cave for breach of contract, breach of the implied warranty and breach of the covenant of good faith and fair dealing survive at this point. The same reasons to reject SSHC's prejudice and other arguments with respect to the contribution and indemnity claims against Cave and Jim's Pro apply to the remaining claims against Cave. Finally, supplemental jurisdiction exists for the third party claims brought by defendants notwithstanding the absence of diversity between SSHC and the third party defendants.  See Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC, 730 F.3d 67, 72-73 (1st Cir. 2013).

As a final matter, this court heard oral argument on two motions for a protective order (Docket Entry ## 24, 25) at the hearing and took the motions under advisement.  As to document request 36 in Burns' first request for production of documents to SSHC, it seeks documents that identify the members of the church

44

who reside or have resided outside Massachusetts. (Docket Entry # 26-2, No. 36). SSHC represents that it responded under oath "that none of its members have been domiciled in defendants' state of Connecticut at all relevant times." (Docket Entry # 31).

Except with respect to membership, there was little discussion about the specific interrogatories, requests for production or deposition subpoena duces tecum categories during the hearing. The filings (Docket Entry ## 24, 25, 26, 27, 31, 39), including the proposed order (Docket Entry # 24-13), also fail to address the specific language in each interrogatory, document request or subpoena duces tecum category. It is the practice of this court to go through the language of each interrogatory, document request and subpoena duces tecum category and issue rulings. The parties shall therefore conduct a further LR. 37.1 conference and attempt to narrow the dispute in light of this opinion. This court will conduct a further hearing on the motions and counsel shall be prepared to address the specific requests.[16]

## CONCLUSION

---

[16] Prior to the hearing, SSHC should file a copy of its responses to Artech's and Burns' first interrogatories and any updated responses to Artech's and Burns' first requests for production of documents.

45

For the above reasons, this court **RECOMMENDS**[17] that the motion to dismiss (Docket Entry # 32) be **DENIED** except with respect to the request for leave to file a third party complaint which is **ALLOWED** as to Cave and Jim's Pro and **DENIED** as to Foley and Flynn. Defendants may file a third party complaint against Cave and Jim's Pro in accordance with this opinion on or before September 19, 2014. This court will conduct a hearing on the motions for a protective order (Docket Entry ## 24, 25) as well as a pending motion to compel (Docket Entry # 44), a third motion for a protective order (Docket Entry # 46) and a motion to strike (Docket Entry # 48) on October 1, 2014, at 2:30 p.m.

        /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[17] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Fed. R. Civ. P. 72(b). Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.